UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENTAIR WATER TREATMENT (OH) COMPANY (FORMERLY KNOWN AS ESSEF CORPORATION)<br><br>and<br><br>PENTAIR WATER POOL & SPA, INC. (FORMERLY KNOWN AS PAC-FAB, INC.)<br><br>and<br><br>PENTAIR WATER BELGIUM BVBA (FORMERLY KNOWN AS STRUCTURAL EUROPE N.V. FORMERLY KNOWN AS SFC)<br><br>Plaintiffs,<br><br>- against -<br><br>FIDELITY & CASUALTY INSURANCE COMPANY OF NEW YORK<br><br>and<br><br>CNA INSURANCE COMPANIES<br><br>Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Case No. 08 CV 3604 (BSJ) |

Plaintiffs Pentair Water Treatment (OH) Company (f/k/a Essef Corporation) ("Essef"), Pentair Water Pool & Spa, Inc. (f/k/a Pac-Fab, Inc.) ("Pac-Fab") and Pentair Water Belgium BVBA (f/k/a Structural Europe N.V. f/k/a SFC) ("SFC") (collectively "Plaintiffs") hereby bring this lawsuit against Fidelity & Casualty Insurance Company of New York ("Fidelity") and the unincorporated association of insurance companies collectively doing business by the fleet name "CNA Insurance Companies" ("CNA") (jointly "Defendants") and state as follows:

NYDOCS1-887840.4

## NATURE OF THE LAWSUIT

1. This Complaint is for declaratory relief and breach of contract arising out of Fidelity and CNA's wrongful denial and refusal to provide coverage under a comprehensive general liability insurance policy for losses suffered by Plaintiffs in the wake of a Legionnaires' disease outbreak aboard a cruise ship operated by Celebrity Cruise Lines, Inc. ("Celebrity") in the summer of 1994.

2. Plaintiffs have brought this Complaint to enforce their rights to full coverage for their losses, and seek a declaration that Fidelity and CNA have obligations to provide coverage, including providing a bond, to Plaintiffs for the losses sustained from the outbreak and the resulting litigation and judgment (the "*Horizon* Cruise Ship Litigation"); for breach of the insurance policy sold by Fidelity and CNA; for consequential damages caused by such breach; and for damages caused by the Defendants' violation of New York State General Business Law § 349.

## THE PARTIES

3. Essef is incorporated in Ohio with its principal place of business in Chardon, Ohio.

4. Pac-Fab, currently known as Pentair Water Pool & Spa, Inc., is incorporated in Delaware and has its principal place of business in Sanford, North Carolina.

5. SFC, formerly known as Structural Europe N.V. and currently known as Pentair Water Belgium BVBA, has its principal place of business in Herentals, Belgium.

6.  Upon information and belief, Fidelity is incorporated in New Hampshire and maintains its principal place of business in New York, New York.

7.  Upon information and belief, CNA is an unincorporated association of insurance companies that includes Fidelity doing business in New York.

## JURISDICTION AND VENUE

8.  This lawsuit is commenced pursuant to 28 U.S.C. § 1332, upon the grounds that there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.  Venue is proper in this Court under 28 U.S.C. § 1391. This Court may exercise personal jurisdiction over defendant Fidelity as it has a principal place of business in New York, New York. Personal jurisdiction also is appropriate over CNA as it conducts extensive business in New York, New York.

## FACTUAL BACKGROUND

I.  THE INSURANCE POLICY

10.  Fidelity and CNA sold Plaintiffs an excess umbrella liability insurance policy which requires the insurance company to pay on behalf of the insured for losses covered under the Fidelity insurance policy, provided the underlying insurance company's policy limits have been exhausted.

11.  Fidelity policy no. CXU-001807 ("the Policy") was in effect from June 1, 1994 through June 1, 1995 and provides a per occurrence and annual aggregate limit of $10,000,000.00. The Policy sits above the Westchester Fire Insurance Company's ("Westchester") umbrella policy, which provides a per occurrence and annual aggregate limit of $15,000,000,00.

12. The Policy follows form to the underlying Westchester policy except as pursuant to the terms and conditions provided within the Policy.

13. Pursuant to the Policy, Fidelity and CNA promise to pay for damages resulting from "Bodily Injury" or "Property Damage" caused by an "Occurrence" that takes place during the policy period.

14. Plaintiffs have paid all of the premiums due under the Fidelity Policy, which was in full force and effect at all pertinent times, and Plaintiffs have complied with all conditions in connection with the Policy.

II. THE LOSS AND THE *HORIZON* CRUISE SHIP LITIGATION

15. On about July 16, 1994, the cruise ship *Horizon*, owned and operated by a predecessor to Celebrity, suffered an outbreak of Legionnaires' disease (the "Incident").

16. Passengers aboard the *Horizon* brought suit against Celebrity and Plaintiffs and others. Plaintiffs had manufactured and distributed the filter in the whirlpool spa where the jury determined the disease originated.

17. Celebrity brought cross-claims against Plaintiffs for damages for attorneys fees, out-of-pocket costs and expenses, lost profits and lost enterprise value allegedly resulting from the Incident.

18. The case has been litigated in installments. The liability issues—those arising out of Celebrity's claims as well as those related to the passenger claims—were tried in a single bellwether trial in May 2000. The jury returned a verdict in favor of the underlying passenger plaintiffs and against both Celebrity and Plaintiffs. The jury also found in favor of Celebrity on some of its claims against Plaintiffs.

III. <u>CELEBRITY'S DAMAGES CLAIMS</u>

19. In June 2006, Celebrity's damages phase of the trial proceeded against Plaintiffs and the jury returned a verdict against Plaintiffs, which the Court partially set aside. A second trial on damages was held in June 2007.

20. Celebrity's damages claims were resolved with a final judgment entered against Plaintiffs in <u>Celebrity Cruise Line, Inc., et al v. Essef Corporation, et al</u>, Case No. 96 Civ 3135, U.S. Dist. Ct., S.D.N.Y., in the total amount of $30,435,226.00 on February 29, 2008.

21. Plaintiffs must post a bond in order to stay execution on the judgment. Westchester has agreed to contribute a bond in the amount of $7,001,810.04 which represents the remainder of its policy limits. As such, the attachment point for Defendants' obligations under the Policy has been reached and exceeded, and the full $10,000,000.00 limits of the Policy are exposed.

22. Plaintiffs' damages resulting from its liability in the *Horizon* Cruise Ship Litigation constitutes a covered loss under the Policy.

**DEMANDS ON DEFENDANTS**

23. No later than October 22, 1996, Plaintiffs provided timely notice to Fidelity and CNA regarding the underlying claims.

24. On June 28, 2006, the first damage verdict was rendered in favor of Celebrity and against Plaintiffs.

25. By letter dated December 11, 2006, Plaintiffs provided notice of that verdict under the Fidelity policies issued to Plaintiffs. That verdict would have reached and exhausted the Fidelity policy. Plaintiffs requested written confirmation that

coverage would be provided under the Fidelity policies for any judgment ultimately rendered against Plaintiffs in the *Horizon* Cruise Ship Litigation.

26. To date, over a year and a half later, no such confirmation has been provided by Fidelity or CNA.

27. By letters dated April 19, 2007 and May 21, 2007, Plaintiffs again requested written confirmation that coverage would be provided under the Fidelity or CNA policies.

28. Again, no such confirmation has been provided by Fidelity or CNA.

29. Instead, by letter dated September 21, 2007, Fidelity and CNA denied coverage and asserted exclusions and impediments to coverage that Defendants' alleged applied to Essef's claim. Defendants' denial was based upon: (a) the alleged application of the pollution exclusion clause; (b) the alleged application of the "Foreign Follow-Form" endorsement; and (c) the alleged failure to exhaust the limits underlying the Policy.

30. On January 23, 2008, Plaintiffs sent a letter to Defendants refuting Fidelity's grounds for denying coverage. Plaintiffs requested Defendants to reconsider their position and to acknowledge coverage.

31. On March 5, 2008, Plaintiffs notified Defendants that Plaintiffs would have to post a bond staying execution of the judgment and requested that Fidelity post a bond.

32. To date, Defendants have neither posted a bond nor agreed to provide coverage.

33. Instead, by letter dated March 27, 2008, Defendants assert that it is Westchester's responsibility to pay the bond, thereby abandoning their policyholders.

34. On March 31, 2008, Celebrity filed its Notice of Appeal in the *Horizon* Cruise Ship Litigation. On April 10, 2008, Plaintiffs filed their Notices of Cross-Appeal.

35. On April 10, 2008, Fidelity and CNA reconfirmed their denial of coverage and refusal to post a bond.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

36. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 35 as if fully set forth herein.

37. Fidelity and CNA have denied or failed to provide coverage for Plaintiffs for their losses from the Legionnaires' outbreak and the resulting *Horizon* Cruise Ship Litigation.

38. Defendants' defenses to coverage are without factual or legal merit.

39. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiffs and Defendants regarding Fidelity and CNA's obligations to provide coverage for the losses Plaintiffs sustained as a result of the *Horizon* Cruise Ship Litigation.

40. Plaintiffs seek a judicial declaration from this Court that: (i) Fidelity and CNA are obligated to perform their contractual obligations under the Policy, and (ii) that Plaintiffs are entitled to coverage, including a bond, for the losses sustained in the *Horizon* Cruise Ship Litigation.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

41. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 40 as if fully set forth herein.

42. Plaintiffs have performed all of its terms and conditions under the Policy.

43. Fidelity and CNA have breached the Policy by refusing or failing to honor the terms of the Policy and denying or failing to respond to requests to provide a bond or amounts due to Plaintiffs up to and including the full Policy limits under the terms of the Policy.

44. As a result of Defendants' breach of their obligations under the Policy, Plaintiffs have suffered direct damages.

45. Further, as a result of the *Horizon* Cruise Ship Litigation, Plaintiffs have sustained injury and monetary damages.

46. Plaintiffs further have incurred costs and expenses by Fidelity's and CNA's failure to provide a bond or coverage up to the Policy limits.

47. Defendants have asserted affirmative defenses including three exclusions claimed to preclude coverage, specifically (a) the alleged application of the "pollution exclusion" clause; (b) the alleged application of the "Foreign Follow-Form" endorsement; and (c) the alleged failure to exhaust underlying limits. None of these alleged exclusions or alleged detriments in fact preclude coverage for Plaintiffs, and Plaintiffs have sustained injury and incurred costs by countering these assertions.

48. Westchester has agreed to contribute the remainder of its policy limits, in the amount of $7,001,810.74, towards a bond for staying execution of the total judgment in the amount of $30,435,226.00.

49. Fidelity and CNA are obligated to contribute to Plaintiffs the amount of $10,000,000.00, representing the full limits of the Policy limits for purposes of Plaintiffs' bond posted in connection with its motion to stay execution of the final judgment.

50. By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory and consequential damages, including but not limited to reasonable attorneys' fees and expenses and the fees relating to Plaintiffs' letter of credit, posted as security in lieu of bond, in amounts as yet to be ascertained and determined at trial.

### THIRD CLAIM FOR RELIEF

**(For Violation of New York State General Business Law § 349)**

51. Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 50 as if fully set forth herein.

52. Defendants, and their agents, servants and/or employees, are governed by regulations promulgated by the Superintendent of Insurance of the New York State Insurance Department as set forth in 11 N.Y.C.R.R. § 216, et seq., and under provisions of New York Insurance Law § 2601, prohibiting unfair claim settlement practices.

53. In addition, Defendants, and their agents, servants and/or employees, are prohibited from engaging in deceptive acts and practices pursuant to § 349 of the General Business Law of the State of New York.

54. The New York Insurance Law prohibits and/or requires certain action by insurance companies, their agents, and representatives and conduct by insurance companies, their agents and representatives who deviating from the following rules of play are deemed to have engaged in unfair claim settlement practices enumerated under New York Insurance Law § 2601:

> (a) Insurance Companies may not fail to adopt and implement reasonable standards from the prompt investigation of claims arising under their policies.
>
> (b) Insurance Companies may not fail to attempt in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear.
>
> (c) Insurance Companies may not compel policyholders to institute suits to recover amounts due under the policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

55. Moreover, New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York and make such acts and practices unlawful.

56. Defendants, through their agents, servants and/or employees, have engaged in deceptive acts and practices in violation of § 349 of the General Business Law of New York by failing to have reasonable standards to effectuate prompt, fair and equitable settlements of Plaintiffs' liability loss claims, and as in this case, Defendants have failed to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim even where liability is reasonably clear, all in violation of New York Insurance Law § 2601.

57. Upon information and belief, moreover, Defendants engage in a practice of advertising, promoting and selling general liability policies of the type at issue

in this Complaint, all of which are consumer-oriented products that are designed and intended by Defendants to be purchased by the public at large in the State of New York.

58. Defendants engage in the practice of advertising, promoting, and selling policies such as the Fidelity Policy by representing to the targeted public at large that inappropriately lulls consumers such as Plaintiffs into believing that Defendants are providing not only comprehensive insurance coverage but also fair and reasonable claim adjustment practices and procedures.

59. The forms making up Fidelity's Excess Umbrella Liability Policy are consumer-oriented in that they are standard and regularly used by Fidelity and CNA in the inducement of consumers like Essef that are in search of insurance protection.

60. Upon information and belief, Defendants engaged in a recurring pattern of selling standard language excess umbrella liability policies that afford coverage for damages owed to third parties, without warning said consumers that Defendants regularly and routinely engage in unfair claims settlement practices that are barred under 11. N.Y.C.R.R. § 216, et seq.

61. Upon information and belief, when confronted with a policyholder's significant loss claim, Defendants regularly and routinely engage in the practice of inordinately delaying the settlement of the claim in violation of New York Insurance Law § 2601 and the regulatory support scheme for this law.

62. Defendants' practice of advertising, promoting and selling policies such as the Fidelity Policy is deceptive and misleading to the public at large in that the policies contain contradictory, false and misleading terms and provisions that permit Defendants to deny or delay insurance coverage.

63. Defendants' practice of advertising, promoting and selling policies such as the Fidelity Policy is deceptive and misleading to the public at large in that Defendants have adopted and implemented a practice of unreasonably delaying the claim adjustment process and unreasonably denying insurance coverage without justification.

64. Defendants' practices as described harm the public at large in a material way by misleading the public at large to rely upon advertisements, promotions and products sold by Defendants when purchasing insurance coverage and by thwarting and frustrating the claims adjustment process with the intent and purpose of discouraging consumers of Defendants' insurance products from pursuing legitimate claims under policies sold by Defendants.

65. Defendants' actions not only have caused injury to Plaintiffs, but, upon information and belief, have caused injury to numerous other similarly situated consumers and policyholders.

66. Fidelity and CNA had a duty to handle Plaintiffs' claim under the Policy promptly, fairly and equitably. In denying or failing to provide insurance coverage under the Policy they sold, Defendants failed to fulfill their obligations to their policyholder.

67. Indeed, Plaintiffs have repeatedly demanded that Defendants provide them with the coverage they purchased. Plaintiffs timely provided notice of the claim and Defendants responded with a statement refuting coverage. Plaintiffs' rebuttal provided reasons based both on the factual circumstances of the Incident and policy language as to why Defendants' refusal to provide coverage was unfounded.

68. Defendants further have failed in their duty to treat their policyholder fairly by asserting illegitimate defenses to Plaintiffs' claim for coverage.

69. As a result of the final judgment against them, Plaintiffs now are obligated to post a bond and have advised Defendants of such obligation and requested contribution. Defendants have failed to contribute or respond fairly, instead only questioning the responsibility of other insurance companies to contribute to the bond. Defendants' failure to contribute to the bond has left their policyholders abandoned.

70. Plaintiffs have been injured and damaged by reason of Defendants' deceptive and misleading acts and omissions in that where the insurer's liability was clear, Defendants failed to promptly and fairly settle and pay to Plaintiffs the amounts due as a result of the losses, and engaged, instead, in unfair claim settlement practices prohibited under New York law.

71. Plaintiffs acted and relied in a reasonable manner upon Defendants' practices of advertising, promoting and selling policies when they purchased the Policy.

72. As a direct and proximate result of the practices and acts of Defendants, Plaintiffs have incurred actual injury.

73. By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory and consequential damages, including but not limited to reasonable attorneys' fees and expenses and the fees relating to Plaintiffs' letter of credit, posted as security in lieu of bond, in amounts as yet to be ascertained and determined at trial.

## DEMAND FOR JURY TRIAL

74. Plaintiffs hereby demand a trial by jury on all causes of action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

75. With respect to the First Cause of Action, a declaration that Fidelity and CNA are obligated to provide coverage, including a bond, in accordance with the terms of the Policy for losses sustained by Plaintiffs in connection with the *Horizon Cruise Ship Litigation*.

76. With respect to the Second Cause of Action for breach of contract, an award against Fidelity and CNA of compensatory, direct and consequential damages, including costs of suit, attorneys' fees and costs, plus the full amount of the bond premium, in an amount to be determined at trial, plus pre and post-judgment interest.

77. With respect to the Third Cause of Action under New York General Business Law § 349, an award against Fidelity and CNA of the remedies provided thereunder, including compensatory damages, direct and consequential, including costs of suit, attorneys' fees and costs, plus the full amount of the bond premium, in an amount to be determined at trial, plus pre and post-judgment interest.

78. All other relief in law or equity that this Court may deem just and appropriate.

April 15, 2008

By: _____

ANDERSON KILL & OLICK, P.C.
Robert M. Horkovich, Esq. (RH-2345)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000

        **ATTORNEY FOR PLAINTIFFS PENTAIR WATER TREATMENT (OH) COMPANY (FORMERLY KNOWN AS ESSEF CORPORATION), PENTAIR WATER POOL & SPA, INC. (F/K/A PAC-FAB, INC.) AND PENTAIR WATER BELGIUM BVBA (F/K/A STRUCTURAL EUROPE N.V. F/K/A SFC)**