UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PENTAIR WATER TREATMENT (OH)
COMPANY (formerly known as
ESSEF CORPORATION) and
PENTAIR WATER POOL & SPA, INC.
(formerly known as PAC-FAB,
INC.) and PENTAIR WATER BELGIUM
BVBA (formerly known as STRUCTURAL
EUROPE N.V. formerly known as SFC),

                        Plaintiffs,

                                          08 Civ. 3604 (BSJ)

    -against-

FIDELITY & CASUALTY INSURANCE
COMPANY OF NEW YORK and
CNA INSURANCE COMPANIES,

                        Defendants.
------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

The Complaint..................................................................................2

Background....................................................................................2

The Claims For Relief..........................................................................5

**ARGUMENT**..................................................................................6

I.

THE THIRD CLAIM FOR RELIEF IN THE COMPLAINT
MUST BE DISMISSED AS PLAINTIFFS HAVE NOT
ALLEGED A VIABLE CLAIM UNDER GBL §349...........................6

  A. Plaintiffs Have Failed To Allege That
     The Conduct Of Which They Complain
     Took Place In New York......................................................7

  B. Plaintiffs Have Failed To Allege That
     Their Claim Arises Out Of
     Consumer-Oriented Conduct..............................................10

  C. Plaintiffs Cannot Pursue Any Remedy
     Under Insurance Law §2601...............................................13

II.

CNA INSURANCE COMPANIES MUST BE
DISMISSED AS A DEFENDANT, AS IT
LACKS THE CAPACITY TO BE SUED......................................13

**CONCLUSION**............................................................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PENTAIR WATER TREATMENT (OH)
COMPANY (formerly known as
ESSEF CORPORATION) and
PENTAIR WATER POOL & SPA, INC.
(formerly known as PAC-FAB,
INC.) and PENTAIR WATER BELGIUM
BVBA (formerly known as STRUCTURAL
EUROPE N.V. formerly known as SFC),

         Plaintiffs,

                08 Civ. 3604 (BSJ)

   -against-

FIDELITY & CASUALTY INSURANCE
COMPANY OF NEW YORK and
CNA INSURANCE COMPANIES,

         Defendants.
-------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Defendants The Continental Insurance Company, as successor by merger to defendant Fidelity & Casualty Insurance Company of New York ("Fidelity") and CNA Insurance Companies ("CNA") respectfully submit the within memorandum of law in support of their motion for an order (i) pursuant to F.R.C.P. 12(b)(6), dismissing the third claim for relief in the complaint (Exhibit A)* on the ground it fails to state a claim upon which relief can be granted and (ii) pursuant to F.R.C.P. 12(b)(6) and 17(b),

---

* The referenced exhibits are attached to the accompanying declaration of Robert M. Kaplan.

74227                 1

dismissing CNA as a defendant on the ground it lacks the capacity to be sued in this action.

Defendants' motion should be granted because plaintiffs' third claim for relief fails to set forth a viable cause of action and because defendant CNA, a putative "unincorporated association", lacks the capacity to be sued in this action. Plaintiffs, in their third claim for relief, have attempted to transform a garden-variety insurance coverage dispute involving a single claim under a single policy into an alleged case of consumer deception under New York's General Business Law §349. However, plaintiffs, all of whom are industrial corporations and nonresidents of New York, fail to allege the *sine qua non* of a claim under §349 -- they fail to allege that the allegedly offending transactions took place in New York and they fail to allege any consumer-oriented conduct. In addition, plaintiffs cannot pursue any claims against CNA because it has not been properly made a party to this case.

## THE COMPLAINT

### Background

Plaintiffs are all industrial corporations who reside outside of New York. Plaintiff Pentair Water Treatment (OH) Company (formerly known as Essef Corporation) is an Ohio corporation with its principal place of business in Ohio (Complaint ¶3). Plaintiff Pentair Water Pool & Spa, Inc. (formerly known as Pac-Fab, Inc.) is a Delaware corporation with its principal place of business in North Carolina (Complaint ¶4). Plaintiff Pentair Water Belgium BVBA (formerly known as Structural

Europe N.V., formerly known as SFC) has its principal place of business in Herentals, Belgium (Complaint ¶5).

Plaintiffs allege that Fidelity is incorporated in New Hampshire and maintains its principal place of business in New York (Complaint ¶6). Plaintiffs allege, upon information and belief, that CNA is an "unincorporated association" of insurance companies, including Fidelity, doing business in New York (Complaint ¶7).

Plaintiffs alleged that defendants sold them an excess umbrella liability insurance which only requires payment for losses covered by that policy and only after the limits of underlying policy have been exhausted (Complaint ¶10). Plaintiffs allege that Fidelity issued policy no. CXU-001807 (the "Policy") which was in effect from June 1, 1994 through June 1, 1995 (Complaint ¶11). Plaintiffs do not allege to whom the Policy was issued or which of them was an insured under the Policy. The text of the Policy (Exhibit B) identifies only Essef Corp. ("Essef") as an insured. Plaintiffs do not allege that the Policy was brokered, sold or issued in New York.

Plaintiffs allege that the Policy has per-occurrence and annual aggregate limits of $10,000,000.00. Plaintiffs allege that the Policy sits above an umbrella policy issued by Westchester Fire Insurance Company (the "Westchester Policy") which has per-occurrence and annual aggregate limits of $15,000,000.00 (Complaint ¶_); a copy of the Westchester Policy is Exhibit C.

Plaintiffs allege that they have been defendants in a litigation (the "Underlying Litigation") stemming from an outbreak of Legionnaires' disease on or about July 16, 1994 aboard a cruise ship owned and operated by a predecessor to Celebrity Cruise Lines, Inc. ("Celebrity") (Complaint ¶¶ 15-16).

74227                                      3

Plaintiffs allege that cruise ship passengers brought suit against Celebrity and plaintiffs; plaintiffs had manufactured and distributed the filter in the whirlpool spa where the disease originated. Plaintiffs allege that Celebrity brought cross-claims against them seeking recovery of attorney's fees, out-of-pocket cost and expenses, lost profits and lost enterprise value (Complaint ¶¶ 16-17).

Plaintiffs allege that the liability issues in the Underlying Litigation were tried in a single trial in May 2000. Plaintiffs allege that a jury found in favor of the passengers and against both Celebrity and plaintiffs and also found in Celebrity's favor on some of its claims against plaintiffs (Complaint ¶18).

Plaintiffs allege that in June 2006, in the damage phase of Celebrity's claims against plaintiffs, a jury returned a verdict against plaintiffs which the court partially set aside (Complaint ¶19). Plaintiffs did not provide notice of this verdict to defendants until a letter dated December 11, 2006 (Complaint ¶25; Exhibit D). This letter was written solely on behalf of Essef by the Ohio law firm of Roetzel & Andress, LPA and was sent to "CNA International" in Chicago, Illinois.

Plaintiffs allege that in letters to Defendants dated April 19, 2007 and May 21, 2007, they requested written confirmation that coverage would be provided under the Policy (Complaint ¶25). By a letter dated September 21, 2007 (Exhibit E), defendants advised plaintiffs that there was no coverage under the Policy because of: the pollution exclusion in the Policy; the application of the foreign follow-form endorsement in the Policy; and the failure to exhaust the underlying limits. This letter was written on behalf of Fidelity by the Cleveland, Ohio law firm of Reminger Co., LPA and was sent to Roetzel & Andress' Akron, Ohio office. Not until January 23, 2008 in a letter sent by

Roetzel & Andress to Reminger Co., did plaintiffs respond to defendants' denial of coverage (Complaint ¶30) (Exhibit F).

Plaintiffs allege that a second trial on damages was held in June 2007 and that on February 29, 2008, Celebrity entered a final judgment against them in the total amount of $30,435,226.00 (Complaint ¶¶19-20). Plaintiffs allege that on March 5, 2008, in a letter from Roetzel & Andress to Reminger, they notified defendants that they had to post a bond to stay execution of the judgment and requested that Fidelity post a bond (Complaint ¶31; Exhibit G). Plaintiffs allege that on March 27 and April 10, 2008, defendants reiterated the denial of coverage and informed plaintiffs that they had no obligation to post a bond in connection with this appeal (Complaint ¶¶ 33, 35); Exhibits H and I). These letters were sent by Reminger to Roetzel & Andress.

**The Claims For Relief**

Plaintiffs have alleged three claims for relief in this action: a claim seeking a declaratory judgment; a claim seeking damages for breach of contract; and a claim alleging violations of New York General Business Law §349 and New York Insurance Law §2601.

Plaintiffs, in their first claim for relief (Complaint ¶¶ 36-40), allege they are entitled to a declaratory judgment that they are entitled to insurance coverage under the Policy, including a bond, for the losses sustained in the Underlying Litigation.

Plaintiffs, in their second claim for relief (Complaint ¶¶ 41-50), allege that Defendants have breached the Policy by failing to honor the Policy's terms and failing to

supply Plaintiffs with a bond and the full limits of the Policy. Plaintiffs allege that Defendants are liable for compensatory and consequential damages due to this breach.

Plaintiffs, in their third claim for relief (Complaint ¶¶ 51-73), have attempted to transform this garden-variety insurance coverage dispute into alleged violations of GBL §349 and Insurance Law §2601. Plaintiffs allege that defendants engaged in deceptive acts and practices, prohibited by GBL §349, by failing to effectuate a prompt, fair and equitable settlement of plaintiffs' claim even where liability is reasonably clear (Complaint ¶¶ 56, 70).

## ARGUMENT

### I.

### THE THIRD CLAIM FOR RELIEF IN THE COMPLAINT MUST BE DISMISSED AS PLAINTIFFS HAVE NOT ALLEGED A VIABLE CLAIM UNDER GBL §349

Plaintiffs' effort, in their third claim for relief, to transform a routine insurance coverage dispute involving a single claim under a single policy into an alleged case of "consumer deception" must be deemed a failure because plaintiffs have failed to allege a viable cause of action under GBL §349. Plaintiffs have failed to allege two essential elements of a viable cause of action under §349 -- they have not alleged that the conduct of which they complain took place in New York and they have not alleged that their claim arises out of "consumer-oriented" conduct. Moreover, Plaintiffs cannot salvage their pleading by relying on Insurance Law §2601, because there is no private cause of action under that statute. As a result, the third claim for relief must be dismissed.

A. **Plaintiffs Have Failed To Allege That
The Conduct Of Which They Complain
<u>Took Place In New York</u>**

GBL §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* …" (emphasis supplied). The New York Court of Appeals has ruled that this statute is designed "to protect consumers in their transactions that take place in New York State. It was not intended to police out-of-state transactions of New York companies…" <u>Goshen v. Mutual Life Ins. Co. of New York</u>, 98 N.Y.2d 314, 325, 746 N.Y.S.2d 858, 864 (2002). As a result, the New York Court of Appeals has ruled that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." <u>Id.</u> In accordance with this definitive ruling, the courts have repeatedly ruled that where the plaintiff has failed to allege that the deceptive practices which allegedly injured the plaintiff took place in New York, the plaintiff is not permitted to pursue a claim under §349.

In <u>Goshen</u>, the plaintiff claimed that the defendants had violated §349 by selling "vanishing premium" insurance policies. The plaintiff alleged that the "vanishing premium" concept was conceived and orchestrated by the defendants in New York. However, the plaintiff, a Florida resident, admitted that he received the defendants' information in Florida and that he purchased his policy and paid his premiums in Florida. As a result, "for purposes of section §349, any deception took place in Florida, not New York" and therefore the plaintiff did not state a cognizable cause of action under §349. 98 N.Y.2d at 326, 746 N.Y.S.2d at 864.

In <u>Wiener v. Unumprovident Corp.</u>, 202 F.Supp.2d 116 (S.D.N.Y. 2002), the plaintiff, who claimed that the defendants had improperly discontinued paying benefits under group and individual disability insurance policies, asserted a claim under §349. Although the plaintiff had submitted her applications for the policies in New York, she resided in New Jersey, the benefits were paid to her in New Jersey and the claimhandling at issue took place outside of New York. As a result, the court held that the defendants' allegedly deceptive practices had not taken place in New York and the plaintiff could not pursue a §349 claim. 202 F.Supp.2d at 120-21.

In <u>Gavin v. AT&T Corp.</u>, 2008 WL 400697 (N.D.Ill. 2008), the plaintiff alleged that a notice sent to AT&T shareholders concerning an exchange of stock certificates was false and misleading and constituted, *inter alia*, a violation of §349. The plaintiff claimed that the offending act took place in New York because AT&T and its shareholders services firm, Georgeson, had offices in New York, Georgeson sent notices to shareholders from New York and that notice told shareholders to mail their certificates and fees to New York. The court rejected the plaintiff's argument and dismissed her §349 claim, ruling that "the deception (if any) occurred in Illinois where Plaintiff received the December 2000 notice and relied on it to exchange her shares through Georgeson."

In <u>Thomas v. Metropolitan Life Ins. Co.</u>, 540 F.Supp.2d 1212 (W.D. Okla. 2008), the plaintiffs brought various claims against Met Life based upon its alleged failure to disclose its conflicts of interest when it sold various financial products. The plaintiffs, none of whom resided in New York, alleged, *inter alia*, that Met Life's conduct violated §349. However, there were no allegation that any of the plaintiffs' purchases of Met

Life's products were made in New York or that any of the transactions at issues took place in New York. The only direct reference to New York in the complaint was that Met Life was headquartered there. The court held that the §349 claim had to be dismissed because there were insufficient allegations of any deception in New York. 540 F.Supp.2d at 1227.

*See also*, Bezuszka v. L.A. Models, Inc., 2006 WL 770526, *15 (S.D.N.Y. 2006) (§349 claim deficient because it failed to "allege that any deception occurred in New York"), Rey-Willis v. Citibank, N.A., 2004 WL 315267, *1 (S.D.N.Y. 2004) (id.).

These principles, applied to the allegations in the complaint, compel the conclusion that plaintiffs' claim under §349 must be dismissed because they have failed to allege that there was any deceptive conduct which took place in New York. Although plaintiffs' complaint is far from crystal-clear, it appears that the "deception" of which they complain is defendants' alleged promotion and sale of insurance policies without disclosing that they do not maintain fair and reasonable claims settlement practices and defendants' failure to supply them with coverage under the Policy (Complaint ¶¶ 56, 58, 59, 70). However, plaintiffs fail to allege that any of this conduct took place in New York. Plaintiffs all admit that they maintain their principal places of business outside New York. Plaintiffs do not allege that they were solicited by defendants in New York for the sale of the Policy. Plaintiffs do not allege that they ever met with defendants in New York concerning the Policy. Plaintiffs do not allege that they purchased the Policy in New York. Plaintiffs do not allege that they paid premiums for the Policy in New York. Plaintiffs do not allege that they ever corresponded with defendants in New York concerning the Policy or the Underlying Litigation. Plaintiffs do not allege that any of

the claims handling of which they complain took place in New York. There is absolutely no allegation of any conduct by defendants in New York, much less any conduct that allegedly deceived plaintiffs.

The cases cited above make clear that in the absence of sufficient allegations of deception by the defendant in New York, a §349 claim cannot survive a threshold motion to dismiss. Since plaintiffs' pleading contains absolutely no allegations of any deception in New York, plaintiffs' claim under §349 must be dismissed.

### B. Plaintiffs Have Failed To Allege That Their Claim Arises Out Of Consumer-Oriented Conduct

Plaintiffs' attempted claim under §349 must also fail because plaintiffs have failed to allege that their claim arises out of consumer-oriented conduct. The New York Court of Appeals has held that a viable claim under §349 must specifically relate to consumer-oriented conduct. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.S.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995). The New York Court of Appeals has held that an insurer's handling of an insurance policy or of claims submitted under an insurance policy did not constitute consumer-oriented conduct necessary to sustain a claim of deceptive business practices under GBL §349. New York University v. Continental Ins. Co., 87 N.Y.2d 308, 320-21, 639 N.Y.S.2d 283, 290-91 (1995). "Private contract disputes regarding policy coverage and the processing of a claim that is unique to the parties does not fall within the ambit of General Business Law §349." Fekete v. GA Ins. Co. of New York, 279 A.D.2d 300, 719 N.Y.S.2d 52, 53 (1st Dep't 2001). A plaintiff asserting a claim under §349 must allege injury to the public generally, not just itself. Int'l Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A.,

25 F.Supp.2d 101, 114 (W.D.N.Y. 1998); see Novogroder/San Bernardino, L.L.C. v. Cohen Realty Services, Inc., 2000 WL 556621, *6 (N.D.Ill. 2000) (The complaint "alleges no facts that would indicate that anyone other than plaintiff would be injured by a breach of the contracts" with the defendants). Numerous courts have similarly held that a plaintiff cannot allege a viable claim under §349 by asserting a routine insurance coverage dispute and contending, in entirely conclusory language, that this dispute is part of a wider unfair claims settlement policy. Perfect Dental, PLLC v. Allstate Ins. Co., 2006 WL 2552171, *2-3 (E.D.N.Y. 2006), USAlliance Federal Credit Union v. Cumis Ins. Society, 346 F.Supp.2d 468, 472 (S.D.N.Y. 2004), Lava Trading Inc. v. Hartford Fire Ins. Co., 326 F.Supp.2d 434, 438-39 (S.D.N.Y. 2004), Oboler v. Ins. Co. of North America, 1994 WL 414438, *3-4 (S.D.N.Y. 1994), Grand General Stores, Inc. v. Royal Indemnity Co., 1994 WL 163973, *3-4 (S.D..N.Y. 1994), Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Co., 834 F.Supp. 605, 608-10 (E.D.N.Y. 1993).

In addition, courts applying New York law have indicated that a consumer, for §349 purposes, is one who purchases "goods and services for personal, family or household use." ExxonMobil Inter-America, Inc. v. Advanced Information Engineering Services, Inc., 328 F.Supp.2d 443, 448 (S.D.N.Y. 2004), Sheth v. N.Y. Life Ins. Co., 273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000). Moreover, "New York courts have generally found that business-to-business transactions do not give rise to §349 claims." ExxonMobil Inter-America, id. As the court stated in Genesco Entertainment v. Koch, 593 F.Supp. 743, 752 (S.D.N.Y. 1984),

> "[T]ransactions involving complex arrangements, knowledgeable and experienced parties and large sums of money...are different in kind and degree

> from those that confront the average consumer who requires that protection of a statute against fraudulent practices."

These precedents, applied to the facts of this case, require the conclusion that plaintiffs' §349 claim does not involve consumer-oriented conduct and therefore must be dismissed. Plaintiffs' cause of action under §349 is based exclusively upon an insurance coverage dispute involving a single claim under a single policy -- exactly what the courts have repeatedly held does not amount to consumer-oriented conduct. Plaintiffs do not allege that anyone else will be injured if defendants do not supply them with coverage, under a single excess umbrella liability policy, for claims arising out of a single outbreak of Legionnaire's disease aboard a single cruise ship.

Moreover, plaintiffs' claim does not involve any goods and services acquired for personal, family or household use; instead, it involves insurance coverage for three industrial corporations whose operations span at least two continents. What is at issue here is a sophisticated transaction among sophisticated parties involving large sums of money. The Policy was issued by a major property/casualty insurer and plaintiffs, who purport to be insureds under that Policy, are sophisticated industrial corporations whose operations span at least two continents. Millions of dollars were involved in the underlying transaction and are at issue here; the Policy has limits of $10,000,000 and sits above the Westchester Policy, which has limits of $15,000,000 and sits above a primary insurance policy with limits of $725,000 per occurrence/$2,000,000 general aggregate. Furthermore, plaintiffs claim that they are entitled to recover the full limits of the Policy. Plaintiffs have been represented by outside professionals at every step of the way with regard to the Policy; the Policy was obtained through an insurance broker located in

Chicago, Illinois and plaintiffs, in their communications with defendants concerning the Policy and Underlying Litigation, were represented by a large Ohio law firm. All of these undisputed facts compel the conclusion that this is precisely the kind of sophisticated commercial transaction which falls outside the perview of §349.

### C. Plaintiffs Cannot Pursue Any Remedy Under Insurance Law §2601

Although plaintiffs have alleged that defendants violated Insurance Law §2601 by "fail[ing] to effectuate a prompt, fair and equitable settlement of Plaintiffs' claim even where liability is reasonably clear" (Complaint §56), that statute does not afford plaintiffs any independent remedy here. It is black-letter law that there is no private cause of action under §2601. Rocanova v. Equitable Life Ass. Society of the United States, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343 (1994)("[T]he law of this State does not currently recognize a private cause of action under Insurance Law §2601"), Guideone Specialty Mut. Ins. Co. v. Congregation Bais Yisroel, 381 F.Supp.2d 267, 282 (S.D.N.Y. 2005) (id.), Sterbenz v. Attina, 205 F.Supp.2d 65, 70-71 (S.D.N.Y. 2002) (id.). As a result, plaintiffs cannot pursue any independent remedy under Insurance Law §2601.

## II.

### CNA INSURANCE COMPANIES MUST BE DISMISSED AS A DEFENDANT, AS IT LACKS THE CAPACITY TO BE SUED

Although plaintiffs have not alleged any facts that this case is anything other than a routine insurance coverage dispute involving a single claim under a single policy issued by a single insurer, plaintiffs have nevertheless attempted to assert claims against

CNA, which is not a party to the Policy and was never referred to in any of Defendants' correspondence. However, CNA must be dismissed as a defendant as it lacks the capacity to be sued.[*] Plaintiffs have failed to sue CNA in the manner prescribed by New York law, which is controlling here, and therefore it has to be dismissed as a defendant.

Plaintiffs have alleged, in paragraph 7 of the complaint, that CNA is an "unincorporated association." Under F.R.C.P. 17(b), the capacity of an unincorporated association to be sued is determined by the law of the state where the court is located. New York's General Associations Law §13, which is entitled "Action or proceeding against unincorporated association," provides, in relevant part, as follows:

> An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefore, either jointly or severally…

Courts applying New York law have concluded that these provisions are *mandatory* and that an unincorporated association can *only* be sued in the name of its president or treasurer. Markewich v. Adikes, 422 F.Supp. 1144, 1147 (S.D.N.Y. 1976), Motor Haulage Co. v. Int'l Brotherhood of Teamsters, 298 N.Y. 208, 211 (1948).

These principles, applied here, require CNA's dismissal as a defendant. Since plaintiffs have alleged that CNA is an unincorporated association, it can only be sued in the name of its president or treasurer. However, plaintiffs have not sued CNA in the

---

[*] There is case law that there is no legal entity named CNA Insurance Companies. Thompson Hardwoods, Inc. v. Transportation Ins. Co., 2002 WL 440222, *4 n. 3 (S.D. Ind. 2002).

name of any alleged president or treasurer; indeed, there is no mention of CNA's alleged president or treasurer anywhere in the summons or complaint.[*] Plaintiffs have also not offered any explanation as to how a nonparty to an insurance contract, like CNA, can possibly be liable under that insurance contract. Accordingly, in the absence of compliance with General Associations Law §13, plaintiffs cannot sue CNA in this action and therefore it has to be dismissed as a defendant.

## CONCLUSION

Therefore, for all the reasons set forth above, it is respectfully requested that defendants' motion to dismiss the complaint be granted in all respects and that the third cause of action be dismissed and CNA be dismissed as a defendant.

Dated: New York, New York
       June 5, 2008

                              FERBER CHAN ESSNER & COLLER, LLP

                              By: /s/ Robert M. Kaplan
                                  Robert M. Kaplan (RK1428)
                              Attorneys for Defendants
                              530 Fifth Avenue
                              New York, New York 10036-5101
                              (212) 944-2200

---

[*] Nor could there be; since "CNA Insurance Companies" does not exist as a legal entity, it has no president or treasurer.