UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PENTAIR WATER TREATMENT (OH) COMPANY (FORMERLY KNOWN AS ESSEF CORPORATION) <br><br> and <br><br> PENTAIR WATER POOL & SPA, INC. (FORMERLY KNOWN AS PAC-FAB, INC.) <br><br> and <br><br> PENTAIR WATER BELGIUM BVBA (FORMERLY KNOWN AS STRUCTURAL EUROPE N.V. FORMERLY KNOWN AS SFC) <br><br><div align="right">Plaintiffs,</div><br><div align="center">- against -</div><br> THE CONTINENTAL INSURANCE COMPANY (AS SUCCESSOR BY MERGER TO FIDELITY & CASUALTY INSURANCE COMPANY OF NEW YORK) <br><br> and <br><br> CNA INSURANCE COMPANIES <br><br><div align="right">Defendants.</div> | **DECLARATION OF** <br> **ROBERT M. HORKOVICH** <br><br><br> **1:08-cv-03604 (BSJ)** |

## DECLARATION OF ROBERT M. HORKOVICH IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

I, ROBERT M. HORKOVICH, declare:

1.      I am an attorney at law, admitted to practice before this Court. I am an equity shareholder of Anderson Kill & Olick, P.C., counsel for Plaintiffs Pentair Water Treatment (OH) Company (f/k/a Essef Corporation) ("Essef"), Pentair Water Pool & Spa, Inc. (f/k/a Pac-Fab, Inc.) ("Pac-Fab") and Pentair Water Belgium BVBA (f/k/a Structural Europe N.V. f/k/a SFC) ("SFC") (collectively "Plaintiffs") in this action. I have

personal knowledge of all the facts contained in this declaration and if called as a witness, I would competently testify thereto.

2.     I submit this declaration to set forth certain exhibits in support of Plaintiffs' Opposition to Defendants' motion for an order (i) pursuant to F.R.C.P. 12(b)(6), dismissing the third claim for relief in the complaint and (ii) pursuant to F.R.C.P. 12(b)(6) and 17(b), dismissing CNA Insurance Companies as a defendant.

3.     Attached as Exhibit A is a copy of Plaintiffs' First Amended Complaint, served upon attorney Robert M. Kaplan, counsel for Defendants The Continental Insurance Company, as successor by merger to Fidelity & Casualty Insurance Company of New York, and CNA Insurance Companies, on June 18, 2008, and also filed with this Court on June 18, 2008.

4.     Therefore, it is respectfully requested that Defendants' Partial Motion to Dismiss the Complaint be denied as moot.


Dated: New York, New York
       June 19, 2008

ROBERT M. HORKOVICH

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENTAIR WATER TREATMENT (OH)
COMPANY (FORMERLY KNOWN AS
ESSEF CORPORATION)

and

PENTAIR WATER POOL & SPA, INC.
(FORMERLY KNOWN AS PAC-FAB,
INC.)

and

PENTAIR WATER BELGIUM BVBA
(FORMERLY KNOWN AS STRUCTURAL
EUROPE N.V. FORMERLY KNOWN AS
SFC)

                              Plaintiffs,

            - against -

THE CONTINENTAL INSURANCE
COMPANY (AS SUCCESSOR BY
MERGER TO FIDELITY & CASUALTY
INSURANCE COMPANY OF NEW YORK)

and

CNA INSURANCE COMPANIES

                              Defendants.



## FIRST AMENDED COMPLAINT

**JURY TRIAL DEMANDED**

**Case No. 1:08-cv-03604 (BSJ)**

Plaintiffs Pentair Water Treatment (OH) Company (f/k/a Essef

Corporation) ("Essef"), Pentair Water Pool & Spa, Inc. (f/k/a Pac-Fab, Inc.) ("Pac-Fab")

and Pentair Water Belgium BVBA (f/k/a Structural Europe N.V. f/k/a SFC) ("SFC")

(collectively "Plaintiffs") hereby bring this lawsuit against The Continental Insurance

Company ("Continental"), as successor by merger to The Fidelity & Casualty Insurance

Company of New York ("Fidelity"), and the joint venture of "CNA Insurance Companies"

("CNA") (collectively "Defendants") and state as follows:

## NATURE OF THE LAWSUIT

1.      This Complaint is for declaratory relief and breach of contract arising out of Defendants' wrongful denial and refusal to provide coverage or a bond under an excess umbrella general liability insurance policy for losses suffered by Plaintiffs in the wake of a Legionnaires' disease outbreak aboard a cruise ship operated by Celebrity Cruise Lines, Inc. ("Celebrity") in the summer of 1994.

2.      Plaintiffs have brought this Complaint to enforce their rights to full coverage for their losses, and seek a declaration that Defendants' have obligations to provide coverage, including providing a bond, to Plaintiffs for the losses sustained from the outbreak and the resulting litigation and judgment entered in New York state (the "*Horizon* Cruise Ship Litigation"); for breach of the insurance policy sold by Fidelity; for consequential damages caused by such breach; and for damages caused by the Defendants' violation of New York State General Business Law § 349.

## THE PARTIES

3.      Essef is incorporated in Ohio with its principal place of business in Chardon, Ohio.

4.      Pac-Fab, currently known as Pentair Water Pool & Spa, Inc., is a wholly-owned subsidiary of Essef incorporated in Delaware (and thus is an insured under the policy) and has its principal place of business in Sanford, North Carolina.

5.      SFC, formerly known as Structural Europe N.V. and currently known as Pentair Water Belgium BVBA, is a wholly-owned subsidiary of Essef (and thus is an insured under the policy) and has its principal place of business in Herentals, Belgium.

6.      Upon information and belief, Fidelity is incorporated in New Hampshire and maintains its principal place of business in New York, New York and is a joint venturer with the other members of the CNA insurance company organization.

7.      Upon information and belief, Fidelity merged, directly or indirectly, into Continental effective December 31, 2006.

8.      Upon information and belief, Continental is one of nine wholly-owned underwriting companies of CNA Financial and is a joint venturer with the other members of the CNA insurance company organization.

9.      Upon information and belief, CNA is a joint venture composed of an insurance company organization which sells insurance policies and which collectively handle claims, members of which include Continental, Columbia Casualty Company, Transcontinental Insurance Company, Valley Forge Insurance Company, and which does business in New York.

## JURISDICTION AND VENUE

10.     This lawsuit is commenced pursuant to 28 U.S.C. § 1332, upon the grounds that there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     Venue is proper in this Court under 28 U.S.C. § 1391.  This Court may exercise personal jurisdiction over defendant Fidelity as it has a principal place of business in New York, New York.  Personal jurisdiction also is appropriate over Continental and CNA as each conducts extensive business in New York, New York.

## FACTUAL BACKGROUND

I.      THE INSURANCE POLICY

        A.      Fidelity's Sale of the Policy

12.    Fidelity sold Plaintiffs an excess umbrella liability insurance policy which requires the insurance company to pay on behalf of the insured for losses covered under the Fidelity insurance policy, provided the underlying insurance company's policy limits have been exhausted.

13.    Policy no. CXU-001807 ("the Policy") was issued by Fidelity & Casualty Company of New York, 180 Maiden Lane, New York, New York 10038.

14.    The Policy was in effect from June 1, 1994 through June 1, 1995 and provides a per occurrence and annual aggregate limit of $10,000,000.00.  The Policy sits above the Westchester Fire Insurance Company's ("Westchester") umbrella policy, which provides a per occurrence and annual aggregate limit of $15,000,000,00.

15.    Westchester is a New York corporation with its principal office at 1325 Avenue of the Americas, New York, New York 10019.

16.    The Policy follows form to the underlying Westchester policy except as pursuant to the terms and conditions provided within the Policy.

17.    Essef is a named insured in the Policy.  By the terms of the Policy, and as wholly-owned subsidiaries of Essef, Pac-Fab and SFC are additional insureds under the Policy.

18.    Pursuant to the Policy, Defendants promised to pay for damages resulting from "Bodily Injury" or "Property Damage" caused by an "Occurrence" that took place during the policy period.

19.    Plaintiffs paid all of the premiums due under the Policy, which was in full force and effect at all pertinent times, and Plaintiffs complied with all terms and conditions of the Policy.

20.    CNA timely has been informed of the underlying claims since the *Horizon* Cruise Ship Litigation began.

B.    <u>CNA's Actions as a Joint Venture</u>

21.    CNA Financial Corporation is the parent company of Continental, into which Fidelity has been merged.

22.    CNA Financial Corporation has described its consolidated subsidiaries in its 10-K filings with the United States Securities and Exchange Commission as "the 8th largest property-casualty insurance organization in the United States."

23.    CNA Financial Corporation also has informed the United States Securities and Exchange Commission in its public filings that Bernard L. Hengesbaugh is Chairman of the Board and Chief Executive Officer of "CNA insurance companies" and that Jonathan D. Kantor is Senior Vice President, General Counsel and Secretary of "CNA insurance companies".

24.    A website under the domain www.cna.com presently identifies Michael Fusco as Executive Vice President and Chief Actuary of the "CNA insurance companies", and James R. Lewis as President and Chief Executive Officer Property and Casualty Operations of "CNA insurance companies".

25.    CNA as a joint venture handles claims against the CNA insurance companies that are members of the CNA insurance organization.

26.    On May 2, 2000, the law firm of Reminger & Reminger sent a letter to Essef in which it expressly represented to its policyholder that it "represents CNA in relation to the Horizon Cruise Ship litigation."

27.    In a letter dated September 21, 2007, the law firm of Reminger &
Reminger expressly represented to its policyholder that "CNA continues its
investigation" under the policies sold to Essef.

28.    The New York telephone directory has no listing for Fidelity.  The
phone number listed on CNA's website for Fidelity is answered "CNA".

II.    THE LOSS AND THE *HORIZON* CRUISE SHIP LITIGATION

29.    On about July 16, 1994, there was an outbreak of Legionnaires'
disease on the cruise ship *Horizon*, owned and operated by a predecessor to Celebrity,
after disembarking from New York City (the "Incident").

30.    Passengers aboard the *Horizon*, many from New York, brought suit
against Celebrity and Plaintiffs and others in federal court in New York.  Plaintiffs had
manufactured and distributed the filter in the whirlpool spa where the jury determined
the disease originated.

31.    Celebrity brought cross-claims against Plaintiffs in the New York
action for damages for attorneys fees, out-of-pocket costs and expenses, lost profits
and lost enterprise value allegedly resulting from the Incident.

32.    The case has been litigated in New York in installments.  The
liability issues—those arising out of Celebrity's claims as well as those related to the
passenger claims—were tried in a single bellwether trial in May 2000 in the Southern
District of New York under United States Magistrate Judge Francis.  The jury returned a
verdict in favor of the underlying passenger plaintiffs and against both Celebrity and
Plaintiffs.  The jury also found in favor of Celebrity on some of its claims against
Plaintiffs.

III.    CELEBRITY'S DAMAGES CLAIMS

33.    In June 2006, Celebrity's damages phase of the trial proceeded against Plaintiffs in the Southern District of New York, and the jury returned a verdict against Plaintiffs, which the Court partially set aside. A second trial on damages was held in June 2007. The substantive rights of the parties during these trials were determined by New York state law.

34.    Celebrity's damages claims were resolved with a final judgment entered against Plaintiffs in Celebrity Cruise Line, Inc., et al v. Essef Corporation, et al, Case No. 96 Civ 3135, U.S. Dist. Ct., S.D.N.Y., in the total amount of $30,435,226.00 on February 29, 2008.

35.    Plaintiffs must post a bond in order to stay execution on the judgment entered against it in New York. Westchester has agreed to contribute a bond in the amount of $7,001,810.04 which represents the remainder of its policy limits. As such, the attachment point for Defendants' obligations under the Policy has been reached and exceeded, and the full $10,000,000.00 limits of the Policy are exposed.

36.    Plaintiffs' damages resulting from its liability in the *Horizon* Cruise Ship Litigation in New York constitute a covered loss under the Policy.

**DEMANDS ON DEFENDANTS**

37.    No later than by letter dated October 22, 1996, Plaintiffs provided timely notice to Defendants regarding the underlying claims at issue in the *Horizon* Cruise Ship Litigation pending in New York.

38.    On June 28, 2006, the first damage verdict was rendered in favor of Celebrity and against Plaintiffs.

39.    No later than by letter dated December 11, 2006, Plaintiffs provided notice of that verdict under the Policy.  That verdict would have reached and exhausted the Policy.  Plaintiffs requested written confirmation that coverage would be provided under the Policy for any judgment ultimately rendered against Plaintiffs in the *Horizon Cruise Ship Litigation* pending in New York.

40.    To date, over a year and a half later, no such confirmation has been provided by Defendants.

41.    By letters dated April 19, 2007 and May 21, 2007, Plaintiffs again requested written confirmation from CNA that coverage would be provided under the Policy.

42.    Again, no such confirmation has been provided by Defendants.

43.    Instead, by letter dated September 21, 2007, Defendants denied coverage and asserted exclusions and impediments to coverage that Defendants' alleged applied to Essef's claim.  Defendants' denial was based upon:  (a) the alleged application of the pollution exclusion clause; (b) the alleged application of the "Foreign Follow-Form" endorsement; and (c) the alleged failure to exhaust the limits underlying the Policy.

44.    On January 23, 2008, Plaintiffs sent a letter to Defendants refuting Fidelity's grounds for denying coverage.  Plaintiffs requested that Defendants reconsider their position and acknowledge coverage.

45.    No later than on March 6, 2008, Plaintiffs notified Defendants that Plaintiffs would have to post a bond staying execution of the judgment rendered in New York federal court and requested that Fidelity post a bond.

46.     To date, Defendants have neither posted the bond due nor agreed to provide coverage.

47.     Instead, by letter dated March 27, 2008, Defendants asserted that it is Westchester's responsibility to pay the bond, thereby abandoning their policyholders.

48.     On March 31, 2008, Celebrity filed its Notice of Appeal in the *Horizon* Cruise Ship Litigation.  On April 10, 2008, Plaintiffs filed their Notices of Cross-Appeal.

49.     On April 10, 2008, Defendants reconfirmed their denial of coverage and refusal to post the bond needed for staying execution of the judgment in New York.

50.     On April 14, 2008, Plaintiffs received a distinct but identical letter to the April 10 letter from Defendants reconfirming their denial of coverage and refusal to post the bond needed for staying execution of the judgment in New York.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

51.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 50 as if fully set forth herein.

52.     Defendants have denied or failed to provide coverage for Plaintiffs for their losses from the Legionnaires' outbreak and the resulting *Horizon* Cruise Ship Litigation.

53.     Defendants' defenses to coverage are without factual or legal merit.

54.     By reason of the foregoing, an actual and justiciable controversy exists between Plaintiffs and Defendants regarding the Defendants' obligations to provide coverage for the losses Plaintiffs sustained as a result of the *Horizon* Cruise Ship Litigation.

55.     Plaintiffs seek a judicial declaration from this Court that: (i) Defendants are obligated to perform their contractual obligations under the Policy, and (ii) that Plaintiffs are entitled to coverage, including a bond under the Policy, for the losses sustained in the *Horizon* Cruise Ship Litigation.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

56.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 55 as if fully set forth herein.

57.     Plaintiffs have fully performed all of the terms and conditions under the Policy.

58.     Defendants have breached the Policy by refusing or failing to honor the terms of the Policy and denying or failing to provide a bond or amounts due to Plaintiffs up to and including the full Policy limits under the terms of the Policy.

59.     As a result of Defendants' breach of their obligations under the Policy, Plaintiffs have suffered direct damages.

60.     Further, as a result of the *Horizon* Cruise Ship Litigation, Plaintiffs have sustained injury and monetary damages.

61.     Plaintiffs further have incurred costs and expenses by Defendants' failure to provide a bond or coverage up to the Policy limits.

62.     Defendants have asserted affirmative defenses including three exclusions claimed to preclude coverage, specifically (a) the alleged application of the "pollution exclusion" clause; (b) the alleged application of the "Foreign Follow-Form" endorsement; and (c) the alleged failure to exhaust underlying limits.  None of these

alleged exclusions or alleged detriments in fact preclude coverage for Plaintiffs, and Plaintiffs have sustained injury and incurred costs by countering these assertions.

63.    Westchester has agreed to contribute the remainder of its policy limits, in the amount of $7,001,810.74, towards a bond for staying execution of the total judgment in the amount of $30,435,226.00.

64.    Defendants are obligated to contribute to Plaintiffs the amount of $10,000,000.00, representing the full limits of the Policy limits for purposes of Plaintiffs' bond posted in connection with its motion to stay execution of the final judgment.

65.    By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory and consequential damages, including but not limited to reasonable attorneys' fees and expenses and the fees relating to Plaintiffs' letter of credit, posted as security in lieu of bond, in amounts as yet to be ascertained and determined at trial.

## THIRD CLAIM FOR RELIEF

### (For Violation of New York State General Business Law § 349)

66.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 65 as if fully set forth herein.

67.    Defendants, and their agents, servants and/or employees, are governed by regulations promulgated by the Superintendent of Insurance of the New York State Insurance Department as set forth in 11 N.Y.C.R.R. § 216, et seq., and under provisions of New York Insurance Law § 2601, prohibiting unfair claim settlement practices.

68.    In addition, Defendants, and their agents, servants and/or employees, are prohibited from engaging in deceptive acts and practices pursuant to § 349 of the General Business Law of the State of New York.

69.    The New York Insurance Law prohibits and/or requires certain action by insurance companies, their agents, and representatives.  The conduct by insurance companies, their agents and representatives who deviate from the following rules of play are deemed to have engaged in unfair claim settlement practices enumerated under New York Insurance Law § 2601:

(a)    Insurance Companies may not fail to attempt in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear.

(b)    Insurance Companies may not compel policyholders to institute suits to recover amounts due under the policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

(c)    Insurance Companies may not fail to adopt and implement reasonable standards from the prompt investigation of claims arising under their policies.

70.    Moreover, New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the State of New York and make such acts and practices unlawful.

71.    Defendants, through their agents, servants and/or employees, have engaged in deceptive acts and practices in violation of § 349 of the General Business Law of New York by failing to effectuate a prompt, fair and equitable settlement of claims such as Plaintiffs' even where liability is reasonably clear, and have failed to bond where required, all in violation of New York Insurance Law § 2601, compelling policyholders such as Plaintiffs to institute this suit to recover amounts due under the insurance policies, and by failing to adopt and implement reasonable standards for the prompt investigation of claims arising under their insurance policies.

72.    Upon information and belief, moreover, Defendants engage in a practice of advertising, promoting and selling general liability policies of the type at issue in this Complaint, all of which are consumer-oriented products that are designed and intended by Defendants to be purchased by the public at large in the State of New York.

73.    The forms making up Fidelity's Excess Umbrella Liability Policy are consumer-oriented in that they are standard and regularly used by Defendants in New York in the inducement of consumers like Essef that are in search of insurance protection.

74.    Upon information and belief, Defendants engaged in a recurring pattern of selling standard language excess umbrella liability policies that afford coverage for damages owed to third parties, without warning said consumers involved in litigation in New York that Defendants regularly and routinely engage in unfair claims settlement practices that are barred under 11. N.Y.C.R.R. § 216, et seq.

75.    Upon information and belief, when confronted with a policyholder's request for bonding in litigation in New York, Defendants regularly and routinely fail to provide bonding, thus leaving their policyholders abandoned.

76.    Upon information and belief, when confronted with a policyholder's significant loss claim in litigation in New York, Defendants regularly and routinely engage in the practice of inordinately delaying the settlement of the claim in violation of New York Insurance Law § 2601 and the regulatory support scheme for this law.

77.    Upon information and belief, Defendants have falsely advertised and promoted their services in New York and nationwide by advertising in well-distributed publications such as The Wall Street Journal.

78.    Defendants engage in the practice of advertising, promoting, and selling policies such as the Policy in New York and elsewhere by causing advertisements to be published in New York and elsewhere that make representations to the targeted public at large which inappropriately lulls consumers such as Plaintiffs into believing that Defendants are providing not only comprehensive insurance coverage but also fair and reasonable claim adjustment practices and procedures.

79.    Defendants' practice of advertising, promoting and selling policies such as the Policy is deceptive and misleading to the public at large in that Defendants have adopted and implemented a practice of unreasonably delaying the claim adjustment process and unreasonably denying insurance coverage, thus significantly impacting litigation in New York such as that to which Plaintiffs were subjected, without justification.

80.    Defendants' practices as described harm the public at large in a material way by misleading the public at large to rely upon advertisements, promotions and products sold by Defendants when purchasing insurance coverage and by thwarting and frustrating the claims adjustment process thus significantly impacting litigation in New York such as that to which Plaintiffs were subjected with the intent and purpose of discouraging consumers of Defendants' insurance products from pursuing legitimate claims under policies sold by Defendants.

81.    Defendants' practice of advertising, promoting and selling policies such as the Policy is deceptive and misleading to the public at large in that the policies contain contradictory, false and misleading terms and provisions that permit Defendants to deny or delay insurance coverage.

82.     Defendants' actions not only have caused injury to Plaintiffs, but, upon information and belief, have caused injury to numerous other similarly situated consumers and policyholders in New York and elsewhere.

83.     Defendants had a duty to handle Plaintiffs' claim under the Policy promptly, fairly and equitably.  In denying or failing to provide insurance coverage under the Policy they sold, Defendants failed to fulfill their obligations to their policyholder and adversely impacted litigation in New York.

84.     Indeed, Plaintiffs repeatedly have demanded that Defendants provide them with the coverage they purchased and the bond they need for litigation in New York.  Plaintiffs timely provided notice of the claim and Defendants responded with a statement refuting coverage.  Plaintiffs' rebuttal provided reasons based both on the factual circumstances of the Incident and policy language as to why Defendants' refusal to provide coverage was unfounded.

85.     Defendants further have failed in their duty to treat their policyholder fairly by asserting illegitimate defenses to Plaintiffs' claim for coverage.

86.     As a result of the final judgment against them, Plaintiffs now are obligated to post a bond and have advised Defendants of such obligation and requested contribution.  Defendants have failed to contribute or respond fairly, instead only questioning the responsibility of other insurance companies to contribute to the bond. Defendants' failure to contribute to the bond has left their policyholders abandoned and adversely impacted litigation in New York.

87.     Plaintiffs have been injured and damaged by reason of Defendants' deceptive and misleading acts and omissions in that where the liability was clear,

Defendants failed to promptly and fairly settle and pay to Plaintiffs the amounts due as a result of the losses, and by engaging in such a pattern and practice with other policyholders involved in litigation in New York such as Plaintiffs, have engaged, instead, in unfair claim settlement practices prohibited under New York law.

88.    Plaintiffs acted and relied in a reasonable manner upon Defendants' practices of advertising, promoting and selling policies when they purchased the Policy.

89.    As a direct and proximate result of the practices and acts of Defendants, Plaintiffs have incurred actual injury in New York.

90.    By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory and consequential damages, including but not limited to reasonable attorneys' fees and expenses and the fees relating to Plaintiffs' letter of credit, posted as security in lieu of bond, in amounts as yet to be ascertained and determined at trial.

## DEMAND FOR JURY TRIAL

91.    Plaintiffs hereby demand a trial by jury on all causes of action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

92.    With respect to the First Cause of Action, a declaration that Defendants are obligated to provide coverage, including a bond, in accordance with the terms of the Policy for losses sustained by Plaintiffs in connection with the *Horizon Cruise Ship Litigation*.

93.    With respect to the Second Cause of Action for breach of contract, an award against Defendants of compensatory, direct and consequential damages,

including costs of suit, attorneys' fees and costs, plus the full amount of the bond

premium, in an amount to be determined at trial, plus pre and post-judgment interest.

     94.    With respect to the Third Cause of Action under New York General

Business Law § 349, an award against Defendants of the remedies provided

thereunder, including compensatory damages, direct and consequential, including costs

of suit, attorneys' fees and costs, plus the full amount of the bond premium, in an

amount to be determined at trial, plus pre and post-judgment interest.

     95.    All other relief in law or equity that this Court may deem just and

appropriate.

June 18, 2008

By: _____

    ANDERSON KILL & OLICK, P.C.
    Robert M. Horkovich, Esq. (RH-2345)
    1251 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 278-1000

    ATTORNEY FOR PLAINTIFFS
    PENTAIR WATER TREATMENT (OH)
    COMPANY (FORMERLY KNOWN AS ESSEF
    CORPORATION), PENTAIR WATER POOL &
    SPA, INC. (F/K/A PAC-FAB, INC.) AND
    PENTAIR WATER BELGIUM BVBA (F/K/A
    STRUCTURAL EUROPE N.V. F/K/A SFC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENTAIR WATER TREATMENT (OH)
COMPANY (FORMERLY KNOWN AS
ESSEF CORPORATION)

and

PENTAIR WATER POOL & SPA, INC.
(FORMERLY KNOWN AS PAC-FAB,
INC.)

and

PENTAIR WATER BELGIUM BVBA
(FORMERLY KNOWN AS STRUCTURAL
EUROPE N.V. FORMERLY KNOWN AS
SFC)

                              Plaintiffs,

        - against -

FIDELITY & CASUALTY INSURANCE
COMPANY OF NEW YORK

and

CONTINENTAL INSURANCE COMPANY

and

CNA INSURANCE COMPANIES

                              Defendants.

08-cv-03604 (BSJ)

**AFFIDAVIT OF SERVICE**

Donald Flynn, being duly sworn, deposes and says:

Deponent is not a party to the action, is over 18 years of age and is employed by Anderson Kill & Olick, P.C., 1251 Avenue of the Americas, New York, NY  10020.

On the 18th day of June, 2008 deponent served a true copy of a **FIRST AMENDED COMPLAINT** upon the law firm of Robson Ferber Frost Chan & Essner, LLP, Attn:  Robert M. Kaplan, Esq. at 530 Fifth Avenue, New York, NY  10036-5101.

                                                    Donald Flynn

Sworn to before me on this
18th day of June, 2008

Notary Public

KATHLEEN M. O'NEILL
Notary Public, State of New York
No. 01ON-6687093
Qualified in Nassau County
Commission Expires 9/30/09

NYDOCS1-894474.1