UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
PENTAIR WATER TREATMENT (OH)
COMPANY (formerly known as
ESSEF CORPORATION) and
PENTAIR WATER POOL & SPA, INC.
(formerly known as PAC-FAB,
INC.) and PENTAIR WATER BELGIUM
BVBA (formerly known as STRUCTURAL
EUROPE N.V. formerly known as SFC),

$\qquad$ Plaintiffs,

$\qquad\qquad\qquad\qquad$ 08 Civ. 3604 (BSJ)

$\qquad$ -against-

THE CONTINENTAL INSURANCE
COMPANY (as successor by merger to
FIDELITY & CASUALTY INSURANCE
COMPANY OF NEW YORK) and
CNA INSURANCE COMPANIES,

$\qquad$ Defendants.
------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

THE FIRST AMENDED COMPLAINT.........................................3

Background...............................................................................3

The Claims For Relief.................................................................6

ARGUMENT............................................................................7

I.

THE THIRD CLAIM FOR RELIEF IN THE FAC
MUST BE DISMISSED AS PLAINTIFFS HAVE NOT
ALLEGED A VIABLE CLAIM UNDER GBL §349...........................7

A.  Plaintiffs Have Failed To Allege That
    The Conduct Of Which They Complain
    Took Place In New York...................................................8

B.  Plaintiffs Have Failed To Allege That
    Their Claim Arises Out Of
    Consumer-Oriented Conduct...........................................11

C.  Plaintiffs Cannot Pursue Any Remedy
    Under Insurance Law §2601............................................14

II.

THE FAC MUST BE DISMISSED TO THE EXTENT
IT IS BASED UPON PLAINTIFFS' CLAIM THAT
DEFENDANTS WERE REQUIRED TO POST AN
APPEAL BOND ON THEIR BEHALF, BECAUSE
DEFENDANTS HAD NO SUCH DUTY....................................15

III.

CNA INSURANCE COMPANIES MUST BE
DISMISSED AS A DEFENDANT, AS PLAINTIFFS
HAVE FAILED TO ALLEGE ADEQUATELY THAT
IT IS A "JOINT VENTURE" AND IT IS NOT A
LEGAL ENTITY CAPABLE OF BEING SUED.............................17

CONCLUSION.........................................................................20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PENTAIR WATER TREATMENT (OH)
COMPANY (formerly known as
ESSEF CORPORATION) and
PENTAIR WATER POOL & SPA, INC.
(formerly known as PAC-FAB,
INC.) and PENTAIR WATER BELGIUM
BVBA (formerly known as STRUCTURAL
EUROPE N.V. formerly known as SFC),

                        Plaintiffs,

                    -against-

THE CONTINENTAL INSURANCE
COMPANY (as successor by merger to
FIDELITY & CASUALTY INSURANCE
COMPANY OF NEW YORK) and
CNA INSURANCE COMPANIES,

                        Defendants.
-------------------------------------------------------x

08 Civ. 3604 (BSJ)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

      Defendants The Continental Insurance Company ("CIC"), as successor by merger

to defendant Fidelity & Casualty Insurance Company of New York ("Fidelity") and

CNA Insurance Companies ("CNA") respectfully submit the within memorandum of law

in support of their motion for an order:

      (i)         pursuant to F.R.C.P. 12(b)(6), dismissing the third claim for relief in

               the first amended complaint (the "FAC", Exhibit A[1]) on the ground it

               fails to state a claim upon which relief can be granted;

---

[1] The referenced exhibits are attached to the accompanying declaration of Robert M. Kaplan.

(ii)        pursuant to F.R.C.P. 12 (b)(6), dismissing the FAC to the extent it is based upon plaintiffs' claim that defendants were required to post an appeal bond on behalf of plaintiffs, on the ground it fails to state a claim upon which relief can be granted; and

(iii)       pursuant to F.R.C.P. 12(b)(6) and 17(b), dismissing CNA Insurance Companies ("CNA") as a defendant on the ground that the FAC fails to state a claim upon which relief can be granted against it and on the ground that CNA lacks the capacity to be sued.

Defendants' motion should be granted because plaintiffs' third claim for relief fails to set forth a viable cause of action, because defendants had no contractual obligation to post an appeal bond on behalf of plaintiffs, because plaintiffs have failed to adequately allege that defendant CNA is a "joint venture" and because CNA is not a legal entity capable of being sued.

First, plaintiffs, in their third claim for relief, have attempted to transform a garden-variety insurance coverage dispute involving a single claim under a single policy into an alleged case of consumer deception under New York's General Business Law §349. However, plaintiffs, all of whom are industrial corporations and nonresidents of New York, fail to allege the *sine qua non* of a claim under §349 -- they fail to allege that the allegedly offending transactions took place in New York and they fail to allege any consumer-oriented conduct.

Second, plaintiffs' claims that defendants breached a duty to them by failing to post an appeal bond on their behalf must be dismissed because they are refuted by the

relevant policy language.  As set forth below, defendants had no duty to post an appeal bond on behalf of plaintiffs.

Third, plaintiffs cannot pursue any claims against CNA because their pleading is inadequate; although plaintiffs claim that CNA is a "joint venture", plaintiffs have not alleged any of the essential elements of a joint venture.  Furthermore, CNA is not a legal entity capable of being sued.[2]

## THE FIRST AMENDED COMPLAINT

### Background

Plaintiffs are all industrial corporations who reside outside of New York. Plaintiff Pentair Water Treatment (OH) Company (formerly known as Essef Corporation) ("Pentair") is an Ohio corporation with its principal place of business in Ohio (FAC ¶3).  Plaintiff Pentair Water Pool & Spa, Inc. (formerly known as Pac-Fab, Inc.), a wholly-owned subsidiary of Pentair, is a Delaware corporation with its principal place of business in North Carolina (Complaint ¶4).  Plaintiff Pentair Water Belgium BVBA (formerly known as Structural Europe N.V., formerly known as SFC), a wholly-owned subsidiary of Pentair, has its principal place of business in Herentals, Belgium (FAC ¶5).

Plaintiffs allege that Fidelity is incorporated in New Hampshire, maintains its principal place of business in New York and was merged into CIC effective December 31, 2006 (FAC ¶¶ 6, 7).  Plaintiffs allege, upon information and belief, that CNA is a

---

[2] Plaintiffs, in their original complaint, alleged that CNA Insurance Companies was an "unincorporated association"; since that allegation was deficient on its face, plaintiffs have now blithely switched gears. Furthermore, defendants, by arguing, infra, that the FAC fails to state a valid cause of action against CNA, do not concede that CNA is a legal entity capable of being sued.

"joint venture composed of an insurance company organization which sells insurance policies and which collectively handle claims" and that CIC is one of the joint venturers (FAC ¶¶ 8, 9).

Plaintiffs allege that Fidelity sold them an excess umbrella liability insurance which only requires payment for losses covered by that policy and only after the limits of underlying policy have been exhausted (FAC ¶12). Plaintiffs allege that Fidelity issued policy no. CXU-001807 (the "Policy") which was in effect from June 1, 1994 through June 1, 1995 (FAC ¶¶ 13, 14). Plaintiffs allege that they are all insureds under the Policy (FAC ¶17) but the text of the Policy (Exhibit B) identifies only Essef Corp. ("Essef") as an insured. Plaintiffs do not allege that the Policy was brokered, sold or issued in New York.

Plaintiffs allege that the Policy has per-occurrence and annual aggregate limits of $10,000,000.00. Plaintiffs allege that the Policy sits above an umbrella policy issued by Westchester Fire Insurance Company (the "Westchester Policy") which has per-occurrence and annual aggregate limits of $15,000,000.00 (FAC ¶14); a copy of the Westchester Policy is Exhibit C. Plaintiffs admit that the Policy follows form to the Westchester Policy except as provided in the Policy (FAC ¶16).

Plaintiffs allege that they have been defendants in a litigation (the "Underlying Litigation") stemming from an outbreak of Legionnaires' disease on or about July 16, 1994 aboard a cruise ship owned and operated by a predecessor to Celebrity Cruise Lines, Inc. ("Celebrity") (FAC ¶¶ 29-30).

Plaintiffs allege that cruise ship passengers brought suit against Celebrity and plaintiffs; plaintiffs had manufactured and distributed the filter in the whirlpool spa

74801                                          4

where the disease originated.  Plaintiffs allege that Celebrity brought cross-claims against them seeking recovery of attorney's fees, out-of-pocket cost and expenses, lost profits and lost enterprise value (FAC ¶¶ 30-31).

Plaintiffs allege that the liability issues in the Underlying Litigation were tried in a single trial in this Court in May 2000.  Plaintiffs allege that a jury found in favor of the passengers and against both Celebrity and plaintiffs and also found in Celebrity's favor on some of its claims against plaintiffs (FAC ¶32).

Plaintiffs allege that in June 2006, in the damage phase of Celebrity's claims against plaintiffs, a jury returned a verdict against plaintiffs which the court partially set aside (FAC ¶33).  Plaintiffs admit that they did not provide notice of this verdict to defendants until a letter dated December 11, 2006 (FAC ¶39; Exhibit D).  This letter was written solely on behalf of Essef by the Ohio law firm of Roetzel & Andress, LPA and was sent to "CNA International" in Chicago, Illinois.

Plaintiffs allege that in letters to defendants dated April 19, 2007 and May 21, 2007, they requested written confirmation that coverage would be provided under the Policy (FAC ¶41; Exhibit E)).  By a letter dated September 21, 2007 (Exhibit F), defendants advised plaintiffs that there was no coverage under the Policy because of: the pollution exclusion in the Policy; the application of the foreign follow-form endorsement in the Policy; and the failure to exhaust the underlying limits.  This letter was written on behalf of Fidelity by the Cleveland, Ohio law firm of Reminger Co., LPA and was sent to Roetzel & Andress' Akron, Ohio office.  Not until January 23, 2008 in a letter sent by Roetzel & Andress to Reminger Co., did plaintiffs respond to defendants' denial of coverage (FAC ¶44; Exhibit G).

74801

5

Plaintiffs allege that a second trial on damages was held in June 2007 and that on February 29, 2008, Celebrity entered a final judgment against them in the total amount of $30,435,226.00 (FAC ¶¶33-34). Plaintiffs allege that on March 6, 2008, in a letter from Roetzel & Andress to Reminger, they notified defendants that they had to post a bond to stay execution of the judgment and requested that Fidelity post a bond on their behalf (FAC ¶45; Exhibit H). Plaintiffs allege that on March 27, April 10 and April 14, 2008, defendants reiterated the denial of coverage and informed plaintiffs that they had no obligation to post a bond in connection with this appeal (FAC ¶¶ 47, 49, 50; Exhibits I and J). These letters were sent by Reminger to Roetzel & Andress.

**The Claims For Relief**

Plaintiffs have alleged three claims for relief in this action: a claim seeking a declaratory judgment; a claim seeking damages for breach of contract; and a claim alleging violations of New York General Business Law §349 and New York Insurance Law §2601. Although plaintiffs admit that the Policy was issued solely by Fidelity, they attempt to attribute liability to CNA as well by claiming that it is a joint venture and that CIC is one of the joint venturers. As a result, all of plaintiffs' claims for relief are alleged against "defendants."

Plaintiffs, in their first claim for relief (FAC ¶¶ 51-55), allege they are entitled to a declaratory judgment that they are entitled to insurance coverage under the Policy, including a bond, for the losses sustained in the Underlying Litigation.

Plaintiffs, in their second claim for relief (FAC ¶¶ 56-65), allege that defendants have breached the Policy by failing to honor the Policy's terms and failing to supply

Plaintiffs with a bond and the full limits of the Policy. Plaintiffs allege that Defendants are liable for compensatory and consequential damages due to this breach.

Plaintiffs, in their third claim for relief (FAC ¶¶ 66-90), have attempted to transform this garden-variety insurance coverage dispute into alleged violations of GBL §349 and Insurance Law §2601. Although the FAC is far from clear, it appears that plaintiffs are alleging that defendants engaged in deceptive acts and practices, prohibited by GBL §349, by promoting and selling insurance policies without disclosing that they do not maintain fair and reasonable claims settlement practices and by failing to supply them with coverage under Policy for the Underlying Litigation (FAC ¶¶ 71-90).

**ARGUMENT**

**I.**

**THE THIRD CLAIM FOR RELIEF IN THE FAC
MUST BE DISMISSED AS PLAINTIFFS HAVE NOT
ALLEGED A VIABLE CLAIM UNDER GBL §349**

Plaintiffs' effort, in their third claim for relief, to transform a routine insurance coverage dispute involving a single claim under a single policy issued by a single insurer into an alleged case of "consumer deception" must be deemed a failure because plaintiffs have failed to allege a viable cause of action under GBL §349. Plaintiffs have failed to allege two essential elements of a viable cause of action under §349 -- they have not alleged that the conduct of which they complain took place in New York and they have not alleged that their claim arises out of "consumer-oriented" conduct. Moreover, plaintiffs cannot salvage their pleading by relying on Insurance Law §2601, because there is no private cause of action under that statute. As a result, the third claim for relief must be dismissed.

**A. Plaintiffs Have Failed To Allege That**
**The Conduct Of Which They Complain**
**Took Place In New York**

GBL §349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state* ..." (emphasis supplied). The New York Court of Appeals has ruled that this statute is designed "to protect consumers in their transactions that take place in New York State. It was not intended to police out-of-state transactions of New York companies..." Goshen v. Mutual Life Ins. Co. of New York, 98 N.Y.2d 314, 325, 746 N.Y.S.2d 858, 864 (2002). As a result, the New York Court of Appeals has ruled that "to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." Id. In accordance with this definitive ruling, the courts have repeatedly ruled that where the plaintiff has failed to allege that the deceptive practices which allegedly injured the plaintiff took place in New York, the plaintiff is not permitted to pursue a claim under §349.

In Goshen, the plaintiff claimed that the defendants had violated §349 by selling "vanishing premium" insurance policies. The plaintiff alleged that the "vanishing premium" concept was conceived and orchestrated by the defendants in New York. However, the plaintiff, a Florida resident, admitted that he received the defendants' information in Florida and that he purchased his policy and paid his premiums in Florida. As a result, "for purposes of section §349, any deception took place in Florida, not New York" and therefore the plaintiff did not state a cognizable cause of action under §349. 98 N.Y.2d at 326, 746 N.Y.S.2d at 864.

In <u>Wiener v. Unumprovident Corp.</u>, 202 F.Supp.2d 116 (S.D.N.Y. 2002), the plaintiff, who claimed that the defendants had improperly discontinued paying benefits under group and individual disability insurance policies, asserted a claim under §349. Although the plaintiff had submitted her applications for the policies in New York, she resided in New Jersey, the benefits were paid to her in New Jersey and the claimhandling at issue took place outside of New York. As a result, the court held that the defendants' allegedly deceptive practices had not taken place in New York and the plaintiff could not pursue a §349 claim. 202 F.Supp.2d at 120-21.

In <u>Gavin v. AT&T Corp.</u>, 2008 WL 400697 (N.D.Ill. 2008), the plaintiff alleged that a notice sent to AT&T shareholders concerning an exchange of stock certificates was false and misleading and constituted, *inter alia*, a violation of §349. The plaintiff claimed that the offending act took place in New York because AT&T and its shareholders services firm, Georgeson, had offices in New York, Georgeson sent notices to shareholders from New York and that notice told shareholders to mail their certificates and fees to New York. The court rejected the plaintiff's argument and dismissed her §349 claim, ruling that "the deception (if any) occurred in Illinois where Plaintiff received the December 2000 notice and relied on it to exchange her shares through Georgeson."

In <u>Thomas v. Metropolitan Life Ins. Co.</u>, 540 F.Supp.2d 1212 (W.D. Okla. 2008), the plaintiffs brought various claims against Met Life based upon its alleged failure to disclose its conflicts of interest when it sold various financial products. The plaintiffs, none of whom resided in New York, alleged, *inter alia*, that Met Life's conduct violated §349. However, there were no allegation that any of the plaintiffs' purchases of Met

Life's products were made in New York or that any of the transactions at issues took place in New York. The only direct reference to New York in the complaint was that Met Life was headquartered there. The court held that the §349 claim had to be dismissed because there were insufficient allegations of any deception in New York. 540 F.Supp.2d at 1227.

See also, Bezuszka v. L.A. Models, Inc., 2006 WL 770526, *15 (S.D.N.Y. 2006) (§349 claim deficient because it failed to "allege that any deception occurred in New York"), Rey-Willis v. Citibank, N.A., 2004 WL 315267, *1 (S.D.N.Y. 2004) (id.).

These principles, applied to the allegations in the complaint, compel the conclusion that plaintiffs' claim under §349 must be dismissed because they have failed to allege that there was any deceptive conduct which took place in New York. Although plaintiffs' complaint is far from crystal-clear, it appears that the "deception" of which they complain is defendants' alleged promotion and sale of insurance policies without disclosing that they do not maintain fair and reasonable claims settlement practices and defendants' failure to supply them with coverage under the Policy for the Underlying Litigation (FAC ¶¶ 71-90). However, plaintiffs fail to allege that any of this conduct took place in New York. Plaintiffs all admit that they maintain their principal places of business outside New York. Plaintiffs do not allege that they were solicited by defendants in New York for the sale of the Policy. Plaintiffs do not allege that they ever met with defendants in New York concerning the Policy. Plaintiffs do not allege that they purchased the Policy in New York. Plaintiffs do not allege that they paid premiums for the Policy in New York. Plaintiffs do not allege that they have any assets in New York. Plaintiffs do not allege that they or their counsel ever corresponded with

defendants or their counsel in New York concerning the Policy or the Underlying Litigation. Plaintiffs do not allege that any of the claims handling of which they complain took place in New York. There is absolutely no allegation of any conduct by defendants in New York, much less any conduct that allegedly deceived plaintiffs.

Plaintiffs insinuate that there is a sufficient New York nexus because the Underlying Litigation was venued in this Court. However, the location of that litigation cannot create a basis for liability under §349. As set forth above, §349 prohibits deceptive conduct by a defendant and plaintiffs do not claim that any of defendants' *conduct* with regard to the Policy took place in New York.

The cases cited above make clear that in the absence of sufficient allegations of deception by the defendant in New York, a §349 claim cannot survive a threshold motion to dismiss. Since plaintiffs' pleading contains absolutely no allegations of any deception in New York, plaintiffs' claim under §349 must be dismissed.

## B. Plaintiffs Have Failed To Allege That Their Claim Arises Out Of Consumer-Oriented Conduct

Plaintiffs' attempted claim under §349 must also fail because plaintiffs have failed to allege that their claim arises out of consumer-oriented conduct. The New York Court of Appeals has held that a viable claim under §349 must specifically relate to consumer-oriented conduct. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.S.2d 20, 25, 623 N.Y.S.2d 529, 532 (1995). The New York Court of Appeals has held that an insurer's handling of an insurance policy or of claims submitted under an insurance policy did not constitute consumer-oriented conduct necessary to sustain a claim of deceptive business practices under GBL §349. New York

University v. Continental Ins. Co., 87 N.Y.2d 308, 320-21, 639 N.Y.S.2d 283, 290-91 (1995). "Private contract disputes regarding policy coverage and the processing of a claim that is unique to the parties does not fall within the ambit of General Business Law §349." Fekete v. GA Ins. Co. of New York, 279 A.D.2d 300, 719 N.Y.S.2d 52, 53 (1st Dep't 2001). A plaintiff asserting a claim under §349 must allege injury to the public generally, not just itself. Int'l Sport Divers Ass'n, Inc. v. Marine Midland Bank, N.A., 25 F.Supp.2d 101, 114 (W.D.N.Y. 1998); see Novogroder/San Bernardino, L.L.C. v. Cohen Realty Services, Inc., 2000 WL 556621, *6 (N.D.Ill. 2000) (The complaint "alleges no facts that would indicate that anyone other than plaintiff would be injured by a breach of the contracts" with the defendants). Numerous courts have similarly held that a plaintiff cannot allege a viable claim under §349 by asserting a routine insurance coverage dispute and contending, in entirely conclusory language, that this dispute is part of a wider unfair claims settlement policy. Perfect Dental, PLLC v. Allstate Ins. Co., 2006 WL 2552171, *2-3 (E.D.N.Y. 2006), USAlliance Federal Credit Union v. Cumis Ins. Society, 346 F.Supp.2d 468, 472 (S.D.N.Y. 2004), Lava Trading Inc. v. Hartford Fire Ins. Co., 326 F.Supp.2d 434, 438-39 (S.D.N.Y. 2004), Oboler v. Ins. Co. of North America, 1994 WL 414438, *3-4 (S.D.N.Y. 1994), Grand General Stores, Inc. v. Royal Indemnity Co., 1994 WL 163973, *3-4 (S.D..N.Y. 1994), Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Co., 834 F.Supp. 605, 608-10 (E.D.N.Y. 1993).

In addition, courts applying New York law have indicated that a consumer, for §349 purposes, is one who purchases "goods and services for personal, family or household use." ExxonMobil Inter-America, Inc. v. Advanced Information Engineering Services, Inc., 328 F.Supp.2d 443, 448 (S.D.N.Y. 2004), Sheth v. N.Y. Life Ins. Co., 273

A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000).  Moreover, "New York courts have

generally found that business-to-business transactions do not give rise to §349 claims."

ExxonMobil Inter-America, id.  As the court stated in Genesco Entertainment v. Koch,

593 F.Supp. 743, 752 (S.D.N.Y. 1984),

> "[T]ransactions involving complex arrangements,
> knowledgeable and experienced parties and large
> sums of money...are different in kind and degree
> from those that confront the average consumer who
> requires that protection of a statute against
> fraudulent practices."

These precedents, applied to the facts of this case, require the conclusion that

plaintiffs' §349 claim does not involve consumer-oriented conduct and therefore must be

dismissed.  Plaintiffs' cause of action under §349 is based exclusively upon an insurance

coverage dispute involving a single claim under a single policy -- exactly what the courts

have repeatedly held does not amount to consumer-oriented conduct.  Plaintiffs do not

allege that anyone else will be injured if defendants do not supply them with coverage,

under a single excess umbrella liability policy, for claims arising out of a single outbreak

of Legionnaire's disease aboard a single cruise ship.

Moreover, plaintiffs' claim does not involve any goods and services acquired for

personal, family or household use; instead, it involves insurance coverage for three

industrial corporations whose operations span at least two continents.  What is at issue

here is a sophisticated transaction among sophisticated parties involving large sums of

money.  The Policy was issued by a major property/casualty insurer and plaintiffs, who

purport to be insureds under that Policy, are sophisticated industrial corporations whose

operations span at least two continents.  Millions of dollars were involved in the

underlying transaction and are at issue here; the Policy has limits of $10,000,000 and sits

above the Westchester Policy, which has limits of $15,000,000 and sits above a primary

insurance policy with limits of $725,000 per occurrence/$2,000,000 general aggregate.

Furthermore, plaintiffs claim that they are entitled to recover the full limits of the Policy.

Plaintiffs have been represented by outside professionals at every step of the way with

regard to the Policy; the Policy was obtained through an insurance broker located in

Chicago, Illinois and plaintiffs, in their communications with defendants concerning the

Policy and Underlying Litigation, were represented by a large Ohio law firm.  All of

these undisputed facts compel the conclusion that this is precisely the kind of

sophisticated commercial transaction which falls outside the perview of §349.

## C. Plaintiffs Cannot Pursue Any Remedy Under Insurance Law §2601

Although plaintiffs have alleged that defendants violated Insurance Law §2601

by "fail[ing] to effectuate a prompt, fair and equitable settlement of claims such as

Plaintiffs' even where liability is reasonably clear, and have failed to bond where

required" (FAC §71), that statute does not afford plaintiffs any independent remedy here.

It is black-letter law that there is no private cause of action under §2601.  Rocanova v.

Equitable Life Ass. Society of the United States, 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339,

343 (1994)("[T]he law of this State does not currently recognize a private cause of action

under Insurance Law §2601"), Guideone Specialty Mut. Ins. Co. v. Congregation Bais

Yisroel, 381 F.Supp.2d 267, 282 (S.D.N.Y. 2005) (id.), Sterbenz v. Attina, 205

F.Supp.2d 65, 70-71 (S.D.N.Y. 2002) (id.).  As a result, plaintiffs cannot pursue any

independent remedy under Insurance Law §2601.

## II.

## THE FAC MUST BE DISMISSED TO THE EXTENT IT IS BASED UPON PLAINTIFFS' CLAIM THAT DEFENDANTS WERE REQUIRED TO POST AN APPEAL BOND ON THEIR BEHALF, <u>BECAUSE DEFENDANTS HAD NO SUCH DUTY</u>

The FAC must be dismissed to the extent it is based upon plaintiffs' allegation that defendants breached a duty to plaintiffs by not posting an appeal bond on their behalf with regard to the Underlying Litigation. The pertinent policy language makes clear that defendants had no obligation to post an appeal bond on plaintiffs' behalf and therefore defendants did not breach any duty to plaintiffs by not posting an appeal bond.

A "follow form" excess policy "incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy." <u>In re Liquidation of Midland Ins. Co.</u>, _ Misc.3d _, _ N.Y.S.2d _, 2008 WL 1989667 n.5 (Sup.Ct.N.Y.Co. 2008). Plaintiffs admit that the Policy follows form to the Westchester Policy unless there are different terms and conditions in the Policy (FAC ¶§16). The Westchester Policy provides, in paragraph II(3), as follows:

> (b) We will pay the premium for all appeal bonds required by law to appeal any "Claim" or "Suit" we defend: but we are not obligated to apply for or furnish any such bond.

Since the Policy contained no contrary provision, CIC's obligations under the Policy with regard to an appeal bond were the same as Westchester's obligations under the Westchester Policy with regard to an appeal bond. At the very most, CIC's obligation with regard to any appeal bond was to pay the premium for such a bond; CIC was not required to furnish any appeal bond on behalf of any insured.

This policy language compels the dismissal of the FAC to the extent that it is

74801

15

based upon CIC's declination to post an appeal bond on behalf of plaintiffs with regard to the Underlying Litigation. Plaintiffs allege that they requested defendants to post an appeal bond on their behalf (FAC ¶45); plaintiffs' counsel, in her letter dated March 6, 2008 (Exhibit H), stated, "…[W]e believe that Fidelity & Casualty should contribute by posting a bond in the amount of its policy limits of $10,000,000." Plaintiffs allege that defendants declined to post such a bond (FAC ¶¶ 47, 49, 50). This issue is referenced in all of plaintiffs' claims for relief; in their first claim for relief, they allege, inter alia, they are entitled to a declaration that they are entitled to a bond under the Policy (FAC ¶55); in the second claim for relief, they allege, inter alia, that they have incurred costs and expense because defendants did not furnish them with a bond (FAC ¶61); and in their third claim for relief, they allege, inter alia, that they have been damaged by defendants' failure to post a bond on their behalf (FAC ¶86). Plaintiffs, in the FAC, do not allege that they ever requested CIC to pay the premium for an appeal bond; instead, plaintiffs admit that they only requested CIC to post an appeal bond. However, as set forth above, CIC did not have a duty to furnish an appeal bond under the Policy. Indeed, plaintiffs do not even allege that CIC had a duty, under the Policy, to post an appeal bond.

CIC cannot be liable to plaintiffs for not performing a duty which it did not have under the Policy. As a result, the FAC must be dismissed to the extent it is based upon defendants' declination to post an appeal bond on plaintiffs' behalf in the Underlying Litigation.

### III.

### CNA INSURANCE COMPANIES MUST BE DISMISSED AS A DEFENDANT, AS PLAINTIFFS HAVE FAILED TO ALLEGE ADEQUATELY THAT IT IS A "JOINT VENTURE" AND IT IS NOT A LEGAL ENTITY CAPABLE OF BEING SUED

Although plaintiffs have not alleged any facts that this case is anything other than a routine insurance coverage dispute involving a single claim under a single policy issued by a single insurer, plaintiffs have nevertheless attempted to assert claims against CNA.  Although CNA is not a party to the Policy and was never referred to in any of correspondence between plaintiffs and Fidelity/CIC, plaintiffs have claimed that CNA is a "joint venture" and that CIC is one of the "joint venturers."  However, plaintiffs have failed to allege any of the essential elements of a joint venture and therefore CNA must be dismissed as a defendant.  In addition, CNA is not a legal entity which is capable of being sued.

Under New York law, there are five essential elements to a joint venture: an agreement to create an enterprise for profit; the parties' mutual intent to be joint venturers; each party's contribution of property, financing, skill, knowledge or effort to the venture; each party's joint management control over the venture; and the sharing of both profits and losses by each venturer.  Kidz Cloz, Inc. v. Officially for Kids, Inc., 320 F.Supp.2d 164, 171 (S.D.N.Y. 2004).[3]  The absence of any of these elements is fatal to a claim of a joint venture.  Id.  A pleading which attempts to allege a joint venture but fails to set forth all of these elements will be dismissed.  Int'l Equity Investments, Inc. v.

---

[3]These are also the essential elements of a joint venture under both Illinois and Ohio law.  Daniels v. Corrigan, 320 Ill. Dec. 124, 139, 886 N.E.2d 1193, 1208 (Ill.App.Ct. 2008), Grendell v. Ohio Environmental Protection Agency, 146 Ohio App.3d 1, 764 N.E.2d 1067, 1075-76 (Ohio Ct. App. 2001).

Opportunity Equity Partners, Ltd., 472 F.Supp.2d 544, 552 (S.D.N.Y. 2007), Zeising v. Kelly, 152 F.Supp.2d 335, 348-49 (S.D.N.Y. 2001) ("Despite the liberal pleading standards of the Federal Rules of Civil Procedure applied by the Court, Plaintiff has failed to adequately allege facts sufficient to plead the existence of a joint venture. As Plaintiff's breach of fiduciary duty claim stems from his inadequate pleading of a joint venture, this claim is DISMISSED WITH PREJUDICE.").

These principles require the dismissal of CNA as a defendant, as plaintiffs have not come close to meeting their pleading burden. Plaintiffs' allegations of a "joint venture" are set forth in paragraphs 8, 9 and 21 through 28 of the FAC. However, plaintiffs have failed to allege *any* of the required essential elements of a joint venture in those paragraphs. The FAC does not allege that the members of the "joint venture" entered into an agreement to create a profit-making enterprise; indeed, the FAC does not even specifically identify each of the alleged "joint venturers".[4] The FAC does not allege that all of the members of the joint venture intended to be joint venturers. The FAC does not allege that each member of the joint venture contributed property, financing, skill, knowledge or effort to the "joint venture". The FAC does not allege that each member of the joint venture had joint management control over the venture. The FAC does not allege that each member of the joint venture was required to share profits and losses with the other members of the joint venture. In the complete absence of any allegations of these essential elements, CNA must be dismissed as a defendant.

---

[4] It is unclear whether plaintiffs are alleging that CNA Financial Corporation is a member of the alleged joint venture; if they are, this Court lacks subject matter jurisdiction. For the purposes of diversity jurisdiction, a joint venture has the citizenship of each of its members, Schiavone Constr. Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996), and CNA Financial Corporation, like plaintiff Pentair Water Pool & Spa, Inc., is a Delaware corporation (see Exhibit K).

Instead of coming forward with these required allegations, plaintiffs, in paragraphs 8, 9 and 21 through 28 of the FAC, set forth an almost random group of assertions concerning CNA Financial Corporation ("CNA Financial") and its subsidiaries and hastily appended the label "joint venture" to them.  However, it is settled that joint ventures and corporations are mutually exclusive ways of doing business.  Itel Containers Int'l Corp. v. Atlanttrafik Express Service Ltd., 909 F.2d 698, 702 (2d Cir. 1990).  A plaintiff who seeks to breach the separate identities of related corporations bears the burden of pleading specific facts sufficient to overcome the presumption of separateness and the complaint will be dismissed in the absence of those specific facts.  De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 69-70 (2d Cir. 1996).  Here, plaintiffs have not alleged the required specific facts.  There is nothing in the FAC that suggests that these companies are anything other than what plaintiffs, and the documents upon which plaintiffs rely, *admit* that they are – an insurance holding company and its subsidiaries.  As set forth in CNA Financial's Form 10-K for the fiscal year ended December 31, 2007, filed with the SEC on February 26, 2008 (Exhibit K), CNA Financial is an insurance holding company.  As set forth in Exhibit 21.1 to that filing, CIC is one of CNA Financial's significant subsidiaries.  As plaintiffs admit, the purported "joint venturers" are all subsidiaries of CNA Financial (FAC ¶8).  Thus, plaintiffs have taken an ordinary corporate structure and attempted to transform it into a "joint venture" -- "CNA Insurance Companies" -- that does not exist outside of plaintiffs' pleading.   However, this is contrary to the applicable law and contrary to the very facts pled by plaintiffs.  If plaintiffs' bare pleading of a "joint venture" was

permitted to survive this motion, any corporation which operated through its subsidiaries would be subject to potential liability through the conclusory label of a "joint venture."

Furthermore, CNA is not a legal entity which is capable of being sued. As set forth in the accompanying declaration of David Lehman and the decision in <u>CNA Financial Corp. v. Brown</u>, 922 F. Supp. 567, 570-72 (M.D. Fla. 1996), <u>aff'd</u>, 162 F.3d 1334 (11th Cir. 1998), there is no legal entity named "CNA Insurance Companies" which is related to CIC or CNA Financial. Instead, the only legal entity named "CNA Insurance Companies" is a corporation owned by one Larry Brown which has never conducted any business and has no relation to CNA Financial and its subsidiaries. CIC and the other subsidiaries and affiliates of CNA Financial use the service mark "CNA" but a service mark cannot be a defendant. Accordingly, this Court must conclude that "CNA Insurance Companies" lacks the capacity to be sued which is required by F.R.C.P. 17(b).

## CONCLUSION

Therefore, for all the reasons set forth above, it is respectfully requested that defendants' motion to dismiss the FAC be granted in all respects and that the third cause of action be dismissed, that the FAC be dismissed to the extent it is based upon plaintiffs' claim that defendants were required to post an appeal bond on behalf of plaintiffs and that CNA Insurance Companies be dismissed as a defendant.

Dated: New York, New York
      July 8, 2008

FERBER CHAN ESSNER & COLLER, LLP
By: /s/ Robert M. Kaplan
    Robert M. Kaplan (RK1428)
Attorneys for Defendants
530 Fifth Avenue
New York, New York 10036-5101
(212) 944-2200