UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PENTAIR WATER TREATMENT (OH)
COMPANY (FORMERLY KNOWN AS
ESSEF CORPORATION)

and

PENTAIR WATER POOL & SPA, INC.
(FORMERLY KNOWN AS PAC-FAB,
INC.)

and

PENTAIR WATER BELGIUM BVBA
(FORMERLY KNOWN AS STRUCTURAL
EUROPE N.V. FORMERLY KNOWN AS
SFC)

                                        Plaintiffs,

              - against -

THE CONTINENTAL INSURANCE
COMPANY (AS SUCCESSOR BY
MERGER TO FIDELITY & CASUALTY
INSURANCE COMPANY OF NEW YORK)

and

CNA INSURANCE COMPANIES

                                 Defendants.

**OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(6) AND
PLAINTIFFS' CROSS-MOTION TO
STRIKE DEFENDANTS' AFFIDAVITS**

**Case No. 1:08-cv-03604 (BSJ)**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PURSUANT TO 12(b)(6) AND PLAINTIFFS' CROSS-MOTION
TO STRIKE DEFENDANTS' AFFIDAVITS**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ........................................................................................................ 1

THE RELEVANT FACTS.......................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 2

ARGUMENT .............................................................................................................. 3

I.    THE APPLICABLE STANDARD FOR DECIDING THE MOTION........................ 3

    A.    Plaintiffs Have Met the Standards Set Out Under Federal Rule of
        Civil Procedure 8(A) ................................................................................ 3

    B.    Defendants' Affidavits and Exhibits Attached Thereto Should Be
        Stricken as Matters Outside the Pleadings Should Not Be
        Considered in a Motion to Dismiss ........................................................ 4

II.   THE FIRST AMENDED COMPLAINT PROPERLY STATES A CAUSE OF
    ACTION FOR A CLAIM UNDER GBL § 349.......................................................... 5

    A.    Deceptive Acts and Practices by Insurance Companies Clearly Fall
        Within the Purview of § 349.................................................................... 6

    B.    Plaintiffs Adequately Have Alleged Conduct Occurring in New York
        State......................................................................................................... 9

    C.    Establishing Violations of Insurance Law § 2601 Satisfies the
        Elements of a Claim Under § 349 ......................................................... 12

III.  DEFENDANTS' DUTY TO PROVIDE COVERAGE IS NOT LIMITED TO
    ISSUING THE BOND THEMSELVES.................................................................. 13

IV.  THE PLEADINGS NAMING THE DEFENDANTS AS A JOINT VENTURE
    ARE ADEQUATE.................................................................................................. 14

    A.    Defendants Have Been Sued as a Joint Venture Because That is
        How They Have Held Themselves Out to Plaintiffs.................................. 14

    B.    The Obligation to Plead With Specificity the Elements of a Joint
        Venture Is Limited to Scenarios Where the Plaintiff is a Member of
        the Joint Venture .................................................................................... 16

    C.    Establishing the Existence of a Joint Venture Requires Information
        on Matters Peculiarly Within the Defendants' Knowledge ....................... 18

    D.    CNA Cannot Both Deny its Capacity to be Sued and Avail Itself of
        the Justice System ................................................................................. 19

CONCLUSION......................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## CASES

Acquista v. New York Life Ins. Co.,
    730 N.Y.S.2d 272 (1st Dep't 2001) ........................................................................ 7

Allen v. WestPoint-Pepperell, Inc.,
    945 F.2d 40 (2d Cir. 1991) ..................................................................................... 3

Bezuszka v. L.A. Models, Inc.,
    No. 04 Civ. 7703 (NRB), 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) ................. 11

Binder v. National Life of Vermont,
    No. 02 Civ. 6411 (GEL), 2003 WL 21180417 (S.D.N.Y. May 20, 2003) ............ 8, 9

Bringman v. CNA Ins. Cos.,
    No. Civ. A. 5:05CV64, 2007 WL 3232534 (N.D. W. Va. Nov. 1, 2007) ............... 19

CNA Ins. Cos. v. Cave,
    753 A.2d 141 (N.J. Super. Ct. App. Div. 2000) .................................................... 20

CNA Ins. Cos. v. Sliski,
    744 N.E.2d 634 (Mass. 2001) ............................................................................... 20

CNA Ins. Cos. v. Waters,
    926 F.2d 247 (3d Cir. 1991) .................................................................................. 20

Continental Cas. Co. v. Diversified Indus., Inc.,
    884 F. Supp. 937 (E.D. Pa. 1995) ........................................................................ 20

DiDonato v. INA Life Ins. Co. of New York,
    No. 99 Civ. 470 (JSM), 1999 WL 436444 (S.D.N.Y. June 24, 1999) ..................... 7

E.E.O.C. v. CNA Ins. Cos.,
    96 F.3d 1039 (7th Cir. 1996) ................................................................................. 20

Gavin v. AT&T Corp.,
    No. 07 Civ. 3078, 2008 WL 400697 (N.D. Ill. Feb. 12, 2008) .............................. 11

Genesco Entertainment v. Koch,
    593 F. Supp. 743 (S.D.N.Y. 1984) .......................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

Page(s)

## CASES

*Goshen v. Mutual Life Ins. Co. of New York*,
    746 N.Y.S.2d 858 (2002) ............................................................................5

*Gucci America, Inc. v. Duty Free Apparel, Ltd.*,
    277 F. Supp. 2d 269 (S.D.N.Y. 2003) .....................................................5

*John's, Inc. v. Island Garden Center of Nassau, Inc.*,
    269 N.Y.S.2d 231 (Dist. Ct. Nassau County 1966) ........................ 17, 18

*Kids Cloz, Inc. v. Officially For Kids, Inc.*,
    320 F. Supp. 2d 164 (S.D.N.Y. 2004) .................................................. 16

*Kittay v. Kornstein*,
    230  F.3d 531 (2d Cir. 2000) ................................................................ 3

*Leider v. Ralfe*,
    387 F. Supp. 2d 283 (S.D.N.Y. 2005) .................................................. 11

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986) .................................................................. 19

*Meyer v. Oppenheimer Mgmt. Corp.*,
    764 F.2d 76 (2d Cir. 1985) .................................................................. 3

*New York University v. Continental Ins. Co.*,
    639 N.Y.S.2d 283 (1995) ................................................................ 8, 9

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    623 N.Y.S.2d 529 (1995) ................................................................ 5, 8

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005) .................................................................. 6

*Rey-Willis v. Citibank, N.A.*,
    No. 03 Civ. 2006, 2004 WL 315267 (S.D.N.Y. Feb. 18, 2004) ........................... 11

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    756 F. Supp. 732 (S.D.N.Y. 1990), *aff'd* 977 F.2d 47 (2d Cir. 1992) .............. 7, 12

## TABLE OF AUTHORITIES
### (continued)

Page(s)

### CASES

*S.E.C. v. McDermott*,
No. 99 Civ. 12256 (MBM), 2004 WL 385197 (S.D.N.Y. March 1, 2004) ...............4

*Saterson v. Planet Ins. Co.*,
No. 93 Civ. 6885 (MBM), 1994 WL 689084 (S.D.N.Y. Dec. 8, 1994)..............7, 12

*Schroders, Inc. v. Hogan Sys., Inc.*,
522 N.Y.S.2d 404 (Sup. Ct. 1987) .......................................................................9

*Simpson v. CNA Ins. Cos.*,
29 F. App'x 51, 2002 WL 226415 (2d Cir. 2002)..................................................20

*Still v. DeBuono*,
101 F.3d 888 (2d Cir. 1996) ..................................................................................3

*Sulner v. General Acc. Fire & Life Assur. Corp., Ltd.*,
471 N.Y.S.2d 794 (Sup. Ct. 1984) .......................................................................7

*Thomas v. Metropolitan Life Ins. Co.*,
540 F. Supp. 2d 1212 (W.D. Okla. 2008)............................................................11

*In re U.S. Lines, Inc.*,
169 B.R. 804 (Bankr. S.D.N.Y. 1994), *rev'd on other grounds*, 220 B.R. 5
(S.D.N.Y. 1997), *rev'd on other grounds*, 197 F.3d 631 (2d Cir. 1999) ................9

*Wiener v. Unumprovident Corp.*,
202 F. Supp. 2d 116 (S.D.N.Y. 2002) .............................................................7, 10

*Withers v. CNA Ins. Cos.*,
31 F. App'x 151, 2001 WL 1747629 (5th Cir. 2001)............................................20

*Zeising v. Kelly,* 152 F.Supp.2d 335, 347 (S.D.N.Y. 2001)......................................16, 17

### STATUTES

Fed. R. Civ. P. 8(a) ....................................................................................passim

Fed. R. Civ. P. 9(b) .......................................................................................18, 19

Fed. R. Civ. P. 12(b)(6).................................................................................3, 21

## <u>TABLE OF AUTHORITIES</u>
**(continued)**

<u>Page(s)</u>

### STATUTES

Fed. R. Civ. P. 12(d) .................................................................................................4

Fed. R. Civ. P. 15(b) ...............................................................................................13

Ins. Law § 2601 ...............................................................................................passim

Gen. Bus. L. § 349...........................................................................................passim

### MISCELLANEOUS

*Wright and Miller,* 5A Fed. Prac. & Proc. Civ.3d § 1291 ...............................................19

## INTRODUCTION

Plaintiffs Pentair Water Treatment (OH) Company (f/k/a Essef Corporation) ("Essef"), Pentair Water Pool & Spa, Inc. (f/k/a Pac-Fab, Inc.) ("Pac-Fab") and Pentair Water Belgium BVBA (f/k/a Structural Europe N.V. f/k/a SFC) ("SFC") (collectively "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss the First Amended Complaint pursuant to 12(b)(6) and 17(b) and cross-moves to strike Defendants' affidavits attached thereto. Specifically, Defendants have moved to dismiss the claim under General Business Law § 349, the entire First Amended Complaint to the extent that it is based on Defendants' alleged obligation to post an appeal bond, and CNA Insurance Companies ("CNA") as a defendant. As set forth below, all three challenged aspects of the complaint meet the pleadings requirements of Fed. R. Civ. P. 8(a) and 12(b)(6). Further, since Defendants' motion purports only to seek dismissal of the claims as pleaded, selective factual allegations in the affidavits Defendants have submitted as part of their moving papers improperly introduce matters outside of the pleadings, and those affidavits should be stricken. Therefore, Plaintiffs respectfully submit that Defendants' motion should be denied and Plaintiffs' cross-motion be granted.

## THE RELEVANT FACTS

As detailed in the First Amended Complaint, Plaintiffs have brought this action as a result of Defendants' wrongful denial and refusal to provide coverage under an excess umbrella general liability insurance policy (the "Policy") for losses suffered by Plaintiffs in the wake of a Legionnaires' disease outbreak aboard a cruise ship operated by Celebrity Cruise Lines, Inc. in the summer of 1994. Following this outbreak,

numerous third-parties brought suit in the United States District for the Southern District of New York (the "*Horizon* Cruise Ship Litigation"). This litigation resulted in the losses for which Plaintiffs claim coverage under the Policy issued by Defendants.

## SUMMARY OF ARGUMENT

• The affidavits and exhibits attached to Defendants' Motion to Dismiss the First Amended Complaint should be stricken as matters outside the pleadings are not appropriate to consider in a 12(b)(6) motion to dismiss and these issues are not ripe for summary judgment.

• The First Amended Complaint adequately states a claim under New York General Business Law § 349 by sufficiently alleging conduct on the behalf of the Defendants that: (1) is consumer-oriented, and (2) occurred in New York.

• The First Amended Complaint adequately states a claim for coverage under the Policy for the final outcome of the underlying *Horizon* Cruise Ship Litigation whether that outcome is a judgment, settlement or otherwise.

• The First Amended Complaint adequately states a claim against Defendant CNA Insurance Companies as a joint venture because Defendants have held themselves out as such and further, Plaintiffs are not claiming any breach of a joint venture agreement between the parties.

## ARGUMENT

**I.    THE APPLICABLE STANDARD FOR DECIDING THE MOTION**

As discussed below, Plaintiffs properly have pled each of their causes of action under the applicable standards delineated within the Federal Rules of Civil Procedure.

### A.    Plaintiffs Have Met the Standards Set Out Under Federal Rule of Civil Procedure 8(A)

Defendants move to dismiss the First Amended Complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.  Such dismissal is considered a "drastic step." *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 80 (2d Cir. 1985).  In deciding a Rule 12 motion, the court must view the Plaintiffs' allegations as true and any reasonable inferences should be drawn in favor of the non-movant. *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996).  The motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

A motion to dismiss is construed in light of Federal Rule of Civil Procedure 8(a) which provides that a pleading which sets forth a claim for relief need only indicate a "short and plain statement of the claim" showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2).  "Dismissal [under Rule 8(a)] 'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Kittay v. Kornstein*, 230

F.3d 531, 541 (2d Cir. 2000) (internal citations omitted).  If a court is able to understand the allegations sufficiently to determine that they state a claim, a complaint satisfies Rule 8.  *Id.*

**B.    Defendants' Affidavits and Exhibits Attached Thereto Should Be Stricken as Matters Outside the Pleadings Should Not Be Considered in a Motion to Dismiss**

As Defendants have moved under 12(b)(6), Plaintiffs respectfully submit that the affidavits and exhibits attached to Defendants moving papers should be stricken to the extent that they introduce matters outside of the pleadings.

By incorporating affidavits and exhibits to their 12(b)(6) motion, it appears that Defendants are attempting to convert their motion to dismiss into a premature motion for summary judgment.  When matters outside of the pleadings are introduced in a movant's 12(b)(6) papers, the court either may (1) exclude such matters and decide the motion only on the complaint, or (2) convert the motion into one for summary judgment and provide both parties opportunity to present additional supporting material. *See S.E.C. v. McDermott*, No. 99 Civ. 12256 (MBM), 2004 WL 385197, at *2 (S.D.N.Y. March 1, 2004) (citing *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000)); *see also* Fed. R. Civ. P. 12(d).

Plaintiffs submit that conversion to summary judgment is inappropriate and premature at this juncture.  The claims at issue in the First Amended Complaint are not ripe for summary judgment.  Discovery has not yet commenced and Plaintiffs require the benefit of such disclosures.  Moreover, Defendants should not be allowed to

take advantage of a summary judgment motion when they have not moved for such an order.

Therefore, Plaintiffs respectfully request that this Court exclude any such matters introduced outside of the pleadings and treat Defendants' motion merely as one for partial dismissal.

## II. THE FIRST AMENDED COMPLAINT PROPERLY STATES A CAUSE OF ACTION FOR A CLAIM UNDER GBL § 349

In its motion to dismiss the § 349 claim, Defendants argue: (1) that Plaintiffs failed to allege New York conduct; (2) that Plaintiffs failed to allege consumer-oriented conduct; and (3) that Plaintiffs cannot pursue any remedy under Insurance Law § 2601. For the reasons set forth below, we respectfully submit that the Court should reject these arguments as the First Amended Complaint sufficiently has stated a cause of action under New York's General Business Law § 349.

A plaintiff asserting a cause of action under § 349 must establish a *prima facie* case alleging that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F.Supp.2d 269, 273 (S.D.N.Y. 2003) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)); *see also Goshen v. Mutual Life Ins. Co. of New York*, 746 N.Y.S.2d 858 (2002). The New York Court of Appeals also has determined that the conduct must have taken place in New York. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (1995). A plaintiff bringing an action under § 349 need not plead these elements with particularity but only is required to meet the "bare-bones notice-

pleading requirements" of Federal Rule 8(a).  *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  As detailed below, Plaintiffs in their First Amended Complaint have sufficiently alleged the elements necessary to state a claim for relief under § 349.

### A.    Deceptive Acts and Practices by Insurance Companies Clearly Fall Within the Purview of § 349

Defendants' argument that Plaintiffs cannot state a claim for relief under § 349 on the basis of an insurance agreement simply is not accurate.  Plaintiffs are not alleging a mere dispute as to coverage under this Policy but rather a scheme including claims handling practices, advertisements and marketing that are not unique to a single transaction.  Compl. ¶¶ 71-82, 87.  Further, the pleadings sufficiently allege that Defendants' acts and practices reach the public at large.  Compl. ¶¶ 71-82, 87.  As set forth in the First Amended Complaint, the Policy sold to Essef was a standard umbrella liability policy comprised of standard forms and was not individually tailored to its specifications.  Compl. ¶¶ 72-74.  Plaintiffs have alleged that Defendants have engaged in a pattern of denying litigants in New York coverage that would impact that litigation and a pattern of failing to bond or pay premiums on bonds on judgments entered in New York that has an impact on New York litigation and litigants.  Compl. ¶¶ 71, 74-76, 79-81, 83, 86-87.

Defendants' argument is based in part on the incorrect assertion that deceptive practices arising from an insurance agreement are not considered consumer-oriented conduct.  Contrary to Defendants' assertions, the prohibitions delineated under GBL § 349 have been construed liberally as applying to industries of all types, including

the insurance industry. The plain words of the statute indicate as such, declaring

unlawful "[d]eceptive acts or practices in the conduct of *any* business, trade or

commerce or in the furnishing of *any* service . . ." Gen. Bus. L. § 349 (emphasis

added). Courts must not dismiss a claim for deceptive acts and practices merely

because it is an insurance transaction and instead should look to whether the elements

of a claim have been satisfied. *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 756

F.Supp. 732, 740 (S.D.N.Y. 1990) (finding nothing within the statute or legislative intent

to indicate that the insurance industry should be excluded from 349's purview), *aff'd* 977

F.2d 47 (2d Cir. 1992); *DiDonato v. INA Life Ins. Co. of New York*, No. 99 Civ. 470

(JSM), 1999 WL 436444, at *1 (S.D.N.Y. June 24, 1999) (stating statute "subject to

broad application" and applicable to nearly all economic activity) (internal citations

omitted).

New York courts have time and again held that § 349 is applicable to

insurance, and to the insurance industry. *See, e.g.*, *Wiener v. Unumprovident Corp.,*

202 F.Supp.2d 116 (S.D.N.Y. 2002) (disagreeing with defendants' argument that

plaintiff's claim based on insurance policy did not allege consumer-oriented conduct);

*DiDonato v. INA Life Ins. Co.* (denying defendant's motion to dismiss § 349 claim

centering around sale of disability insurance); *Saterson v. Planet Ins. Co.*, No. 93 Civ.

6885 (MBM), 1994 WL 689084, at *6 (S.D.N.Y. Dec. 8, 1994) ("This law applies to

insurance companies, and permits insureds to maintain first-party suits against

insurers."); *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 279 (1st Dep't 2001);

*Sulner v. General Acc. Fire & Life Assur. Corp., Ltd.*, 471 N.Y.S.2d 794 (Sup. Ct. 1984).

A second meritless argument of Defendants is that a single "one-shot" transaction is not subject to § 349. As stated above, the First Amended Complaint alleges more than this. However, the law is clear that the consumer-oriented conduct "need not be repetitive or recurring." *See New York University v. Continental Ins. Co.*, 639 N.Y.S.2d 283, 290 (1995). The statute's intent is to provide a means of halting instances of consumer fraud without waiting until such time that the fraud becomes persistent. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (1995). Plaintiffs need not show repetitive behavior, whether directed at the pleader or other consumers, but only must demonstrate that the practices "have a broader impact on consumers at large." *Oswego*, 623 N.Y.S.2d at 532. This threshold has been satisfied where plaintiffs complain of acts that "potentially affect similarly situated consumers." *Oswego*, 623 N.Y.S.2d at 533. Further, establishing the true extent of those actions requires information that can only be revealed through discovery. *See Binder v. National Life of Vermont*, No. 02 Civ. 6411 (GEL), 2003 WL 21180417, at *6 (S.D.N.Y. May 20, 2003) (plaintiff was not required to plead specific facts supporting allegation that claims denial was a part of a larger practice to withstand motion to dismiss) (citing *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 279 (1st Dep't 2001) (". . . plaintiff cannot now determine, at this pre-discovery phase, whether this same alleged practice has been aimed at other policyholders besides himself so as to have a 'broader impact on consumers at large' . . . in the context of this dismissal motion, the claimed conducted may be said to fall within the parameters of an unfair or deceptive practice")).

Moreover, the types of "private contract disputes" that the courts have

excluded from the ambit of § 349 truly are one-of-a-kind transactions.  *See Genesco*

*Entertainment v. Koch*, 593 F.Supp. 743, 752 (S.D.N.Y. 1984) (finding that § 349 did not

apply to an agreement for one-night rental of Shea Stadium).  In the insurance context,

the New York Court of Appeals, in finding there was no consumer-oriented conduct in

*New York University v. Continental Ins. Co.*, indicated that "[t]he policy was not a

standard policy, . . . but was tailored to meet the purchaser's wishes and requirements."

639 N.Y.S.2d 283, 290 (1995); *see also Binder*, 2003 WL 21180417, at *6.

Finally, Defendants' argument that claims under § 349 were meant only

for individual consumers is unavailing.  Business and corporate entities have

consistently been allowed to bring claims under § 349.  *See, e.g.*, *In re U.S. Lines, Inc.*,

169 B.R. 804, 826 (Bankr. S.D.N.Y. 1994) (disagreeing with party's contention that a

corporate entity cannot bring a § 349 claim), *rev'd on other grounds*, 220 B.R. 5

(S.D.N.Y. 1997), *rev'd on other grounds*, 197 F.3d 631 (2d Cir. 1999); *Oswego*, 623

N.Y.S.2d at 531 (Plaintiffs are not-for-profit associations); *Schroders, Inc. v. Hogan*

*Sys., Inc.*, 522 N.Y.S.2d 404, 406 (Sup. Ct. 1987).

## B.    Plaintiffs Adequately Have Alleged Conduct Occurring in New York State

Defendants further argue that Plaintiffs have not alleged that the

complained of conduct took place in New York.  As an initial matter, the Policy was

issued by Fidelity & Casualty Company of New York, a corporation that had its principal

place of business in New York City.  Compl. ¶¶ 6, 13.  The underlying policy which the

Policy follows form to was issued by Westchester Fire Insurance Company, a New York corporation with its principal place of business in New York City.  Compl. ¶¶ 14-15.

Further, the First Amended Complaint more than sufficiently sets forth facts pertaining to the *Horizon* Cruise Ship Litigation's roots and ultimate judgment in New York.  The First Amended Complaint alleges that the cruise ship disembarked from New York City carrying many passengers from New York.  Compl. ¶¶ 29-30.  The First Amended Complaint alleges that litigation was then brought against Celebrity Cruises and Essef in federal court in New York.  Compl. ¶¶ 30, 32.  As further set forth in the First Amended Complaint, Celebrity's cross-claims against Essef and the whole of the damages phase of the litigation also occurred in New York.  Compl. ¶¶ 31-35.  Moreover, Plaintiffs have sufficiently alleged that they informed Defendants of and called upon Defendants to assist in the litigation in New York.  Compl. ¶¶ 37, 39, 41, 45.

Yet Defendants attempt to downplay the singular importance of the underlying transaction's New York connections.  Indeed, the Defendants cite no case law to support their naked and wholly unsubstantiated statement that the venue of the underlying litigation is an insufficient nexus to New York.  This offending conduct, the failure to assist their policyholders as they faced and entered into New York litigation, has not only greatly affected its policyholder but has affected other policyholder litigants in New York and also affected the New York federal court system itself.

Further, the cases Defendants do cite in its motion are distinguishable.  In *Wiener v. Unumprovident Corp.*, 202 F.Supp.2d 116 (S.D.N.Y. 2002), the plaintiff's only allegation of New York conduct was that she had submitted her applications for the

policies in New York.  In *Gavin v. AT&T Corp.*, No. 07 Civ. 3078, 2008 WL 400697, at *9

(N.D. Ill. Feb. 12, 2008), while the plaintiff alleged that the defendants were located in

New York and their contact to other class members was conducted in New York, the

court considered the plaintiff deceived at the location where she received information

and relied on it.  In *Thomas v. Metropolitan Life Ins. Co.*, 540 F.Supp.2d 1212, 1226-27

(W.D. Okla. 2008), the only reference to New York in the complaint was that it was Met

Life's headquarters.  In *Bezuszka v. L.A. Models, Inc.*, No. 04 Civ. 7703 (NRB), 2006

WL 770526, at *15 (S.D.N.Y. Mar. 24, 2006), the plaintiff whose claims centered around

a New York modeling contest had voluntarily dismissed her claims and none of the

remaining plaintiffs alleged deception in New York.  In *Rey-Willis v. Citibank, N.A.*, No.

03 Civ. 2006, 2004 WL 315267, *1 (S.D.N.Y. Feb. 18, 2004), the court found insufficient

the fact that the plaintiff's bank account was located in New York and the decisions

regarding transfers allegedly were made there despite the fact that plaintiff resided in

Argentina and the account representatives were in Florida.

Moreover, it is not required that Defendants' conduct in its entirety take

place in New York in order for the geographical scope of § 349 to be satisfied.  *See*

*Leider v. Ralfe*, 387 F.Supp.2d 283, 294 (S.D.N.Y. 2005).  The incident resulting in the

loss under the Policy concerned New York residents and commenced in New York.

Compl.  ¶¶ 29-30.  Further, a nearly decade-long litigation commenced and was

finalized in New York.  Compl.  ¶¶ 31-35.  In comparing the cases cited by Defendants,

the New York conduct at issue here has stronger ties to the state of New York as well

as a more pronounced effect on the New York public.

### C.     Establishing Violations of Insurance Law § 2601 Satisfies the Elements of a Claim Under § 349

Defendants further argue that there is no private cause of action under New York Insurance Law § 2601.  Plaintiffs have not pled a private cause of action under § 2601.  Instead, Plaintiffs have alleged that one way in which Defendants have violated § 349 is by engaging in conduct that violates § 2601.  This is supported by the cases.  *See Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F.Supp. 732, 738 (S.D.N.Y. 1990), *aff'd* 977 F.2d 47 (2d Cir. 1992) ("The Court . . . has little difficulty in concluding that a policy and practice of violating . . . § 2601 and the rules promulgated thereunder, . . . if proven, constitutes a 'deceptive business practice' sufficient to satisfy the requirements of Section 349."); *Saterson v. Planet Ins. Co.*, 1994 WL 689084 (S.D.N.Y. Dec. 8, 1994).  As such, Defendants misconstrue Plaintiffs' pleadings in relation to § 2601 of the Insurance Law.  Plaintiffs' pleadings assert injury based on conduct of the Defendants that has violated the Insurance Law, as under the cases they may.

Plaintiffs sufficiently have alleged acts by the Defendants that, if proven, clearly violate § 2601.  Plaintiffs have put forth facts alleging that Defendants have failed to effectuate prompt, fair and equitable settlements of claims by denying coverage by letter dated September 21, 2007 after notice was provided of a verdict against Plaintiffs by letter dated December 11, 2006.  Compl. ¶¶ 39-43.  Plaintiffs have put forth facts alleging that they were compelled to institute this action because of Defendants failure to provide coverage under the Policy.  Compl. ¶¶ 35, 39-50.  This is not done to establish a private cause of action under New York Insurance Law § 2601, but rather to demonstrate a violation of General Business Law § 349 by establishing, *inter alia*, a violation of § 2601.

## III.    DEFENDANTS' DUTY TO PROVIDE COVERAGE IS NOT LIMITED TO ISSUING THE BOND THEMSELVES

Defendants argue that the First Amended Complaint should be dismissed to the extent that it relies on Plaintiffs' request for a bond. This assertion misconstrues the thrust of the First Amended Complaint. Plaintiffs pleadings sufficiently allege that they have suffered a loss covered by the Policy. Plaintiffs allege that the Policy was in place at the time of the loss. Compl. ¶ 19. Plaintiffs allege that they have fulfilled all of their obligations under the Policy. Compl. ¶ 19. Plaintiffs allege that Defendants were timely informed of the underlying litigation that is the basis of the claim. Compl. ¶ 20, 37, 39. Further, Plaintiffs have alleged that they requested confirmation of coverage before a final judgment was entered or a bond was required. Moreover, the First Amended Complaint clearly asks for coverage *including* the bond, *or* the bond, but does not suggest that the dispute is based *only* on the bond. Compl. ¶ 55, 58, 61.

At the time that the First Amended Complaint was filed, Pentair was under an obligation to post a bond to stay execution of the final judgment. Compl. ¶¶ 34-35. The underlying litigation, however, is dynamic, and while the exact resolution of the underlying action continues to develop and should be considered a moving target, Defendants' obligations remain intact—to provide the coverage that Essef bargained for and relied on when purchasing the Policy. The course of such litigation may take various routes ending in judgment, settlement or appeal. At the time of trial, the complaint can be amended  to conform to the developing facts before it. Fed. R. Civ. P. 15(b). The Defendants refusal to acknowledge coverage or provide coverage is actionable whatever the possible final outcome of the underlying litigation.

## IV.    THE PLEADINGS NAMING THE DEFENDANTS AS A JOINT VENTURE ARE ADEQUATE

The Defendants have attempted to place a heightened pleading burden upon the Plaintiffs by referencing case law wholly irrelevant to the claims at hand.  As described in more detail below, it is not Plaintiffs' obligation to establish the existence of a joint venture agreement to which they are not a party.  Further, the elements showing the existence of a joint venture are such that only a party to a joint venture agreement could possibly have adequate knowledge to plead with such specificity.

### A.    Defendants Have Been Sued as a Joint Venture Because That is How They Have Held Themselves Out to Plaintiffs

Plaintiffs have brought this action against CNA Insurance Companies because of the manner in which they have held themselves out to Plaintiffs, other policyholders and the public at large.  As averred in the pleadings and discussed below, CNA Insurance Companies appears to operate as a joint venture by advertising its products under the name "CNA Insurance Companies," by having persons holding offices under the name "CNA insurance companies", by statements made within CNA Financial Corporation's filings with the United States Securities and Exchange Commission, and by representations from counsel for the insurance companies that they represent "CNA."

As an initial matter, the First Amended Complaint alleges that CNA Insurance Companies has advertised its services in well-distributed publications under the name "CNA Insurance Companies".  Compl. ¶ 77.  The phone number listed on CNA's website for Fidelity is answered "CNA."  Compl. ¶ 28.  Further, a website under the domain www.cna.com does not list directors and officers of the separate companies

but instead lists Michael Fusco as Executive Vice President and Chief Actuary of the "CNA insurance companies" and James R. Lewis as President and Chief Executive Officer Property and Casualty Operations of "CNA insurance companies".  Compl. ¶ 24.

As further averred in the pleadings, during the course of the handling of Plaintiffs' claim, Defendants' correspondence directed to Plaintiffs has represented that "CNA" was responsible for or otherwise involved in the process.  Compl. ¶¶ 26-27. Correspondence from the law firm of Reminger & Reminger also clearly states to the policyholder that it "represents CNA."  Compl. ¶ 26.

Moreover, financial statements filed with the United States Securities and Exchange Commission by CNA Financial Corporation reference the CNA Insurance Companies.  Compl. ¶ 23.  A 10-K filing indicates that CNA Financial Corporation has described its consolidated subsidiaries as "the 8th largest property-casualty insurance organization in the United States."  Compl. ¶ 22.  The 10-K also indicates that Bernard L. Hengesbaugh is Chairman of the Board and Chief Executive Officer of "CNA insurance companies" and that Jonathan D. Kantor is Senior Vice President, General Counsel and Secretary of "CNA insurance companies."  Compl. ¶ 23.

Because of these representations, as alleged in the First Amended Complaint, CNA has held itself out as to Plaintiffs and the public at large that it operates as a joint venture.

**B.    The Obligation to Plead With Specificity the Elements of a Joint Venture Is Limited to Scenarios Where the Plaintiff is a Member of the Joint Venture**

The cases cited by Defendants in support of their contention that Plaintiffs must set forth the elements of a joint venture within their pleadings are inapposite. In each of the cases cited, the allegations of liability were based upon the existence of a joint venture agreement between the parties to the action, a relationship neither alleged nor at issue here.

Under New York law, there are five elements necessary in showing that a joint venture has been established: (1) an agreement to create an enterprise for profit; (2) the parties' mutual intent to be joint venturers; (3) a contribution of property, financing, skill, knowledge or effort to the venture; (4) a degree of joint management control over the venture; and (5) a provision for sharing of losses and profits. *See, e.g.*, *Kids Cloz, Inc. v. Officially For Kids, Inc.*, 320 F.Supp.2d 164, 171 (S.D.N.Y. 2004).

In *Kids Cloz*, the plaintiff's claims were based upon the alleged existence of a failed relationship between Kids Cloz and the defendants. The plaintiffs' claims—which included breach of fiduciary duty and wrongful termination of a joint venture—were based upon this thirteen-year business relationship. The court found that no triable issue of fact existed as to whether a joint venture existed, and for that reason, the claims predicated upon that relationship must fail, granting defendants summary judgment. *Id.* at 170, 176-77. Similarly, in *Zeising v. Kelly* 152 F.Supp.2d 335, 347 (S.D.N.Y. 2001), also cited by Defendants, the Plaintiff also made a claim based on a breach of fiduciary duty. The court said that since the breach of fiduciary duty claim was "predicated on the conclusion that the agreement [between the plaintiff and

defendants] was a joint venture" it must first determine whether the Plaintiff adequately pled a joint venture in the complaint. *Id.* Since the Plaintiff could not allege sufficient facts showing a joint venture, the breach of fiduciary duty claim could not be maintained. *Id.* at 349.

Plaintiffs here do not allege that Plaintiffs entered into a joint venture agreement with the Defendants. Nor are Plaintiffs claims based on the existence of a joint venture. Plaintiffs have identified the Defendants as joint venturers because they have been held out to Plaintiffs as such. New York courts have permitted an action against defendants that have held themselves out as a joint venture. In *John's, Inc. v. Island Garden Center of Nassau, Inc.*, 269 N.Y.S.2d 231, 233 (Dist. Ct. Nassau County 1966), the defendants asserted in their motion to dismiss that Island Garden Center, Inc. had no legal corporate existence. The plaintiffs conceded that it could not establish a legal corporate existence, but argued that since it was suing all defendants as a joint venture doing business under the name Island Garden Center, Inc., the lack of legal corporate existence was immaterial. *Id.* at 234. In opposing the defendants' motion to dismiss, the plaintiff annexed copies of purchase orders and letters that obscured the separate corporate names and appeared only as Island Garden Center, Inc. *Id.* at 235-36. In finding that there was a holding out to the plaintiff that the corporate defendants were operating as a joint venture or partnership, the court said "[t]he manner in which defendants conducted business and held themselves out to persons dealing with them under an assumed fictitious and non-existent corporate title would appear to estop them from denying that they were joint venturers." *Id.* at 235-36. While the issue at hand dealt with the service of process upon the defendants, the court declared that because

the plaintiff described the defendants as joint venturers in the complaint, service on one constituted valid service on all. *Id.* at 236. Nowhere in the opinion is there an indication that the plaintiffs were required to do more in the complaint than simply describe the defendants as joint venturers in order to move forward with the action.

## C.    Establishing the Existence of a Joint Venture Requires Information on Matters Peculiarly Within the Defendants' Knowledge

Defendants' suggestion that Plaintiffs have failed to adequately allege that CNA is a joint venture distorts the nature of the claim. The elements required to prove the existence of a joint venture require information that only feasibly can be known by a member of that joint venture. Plaintiffs here do not allege liability based upon a joint venture agreement between them and the Defendants, and thus Plaintiffs cannot be expected to have within their control the information necessary to plead the existence of a joint venture with the specificity Defendants claim necessary. Assuming, *arguendo*, that Defendants are correct, Plaintiffs nevertheless should be excused any perceived deficiency of their pleadings because such matters relating to the existence of the joint venture peculiarly are within the Defendants' knowledge.

As detailed above, Federal Rule of Civil Procedure 8 is construed liberally in determining whether a plaintiff has sufficiently stated a claim for relief. The pleadings need only indicate a "short and plain statement of the claim." Fed. R. Civ. P. 8. Despite the Federal Rules heightened pleading standard for alleging claims of fraud or mistake with particularity, see Fed. R. Civ. P. 9(b), a plaintiff making such allegations will be permitted to make such allegations upon information and belief where the "matters [are] peculiarly within the opposing party's knowledge." *See Luce v. Edelstein*, 802 F.2d 49,

54 n.1 (2d Cir. 1986). Even in the context of fraud, where the specificity requirement is dictated by statute, failure to meet the specificity requirement dictated by Rule 9(b) is nearly always remedied by repleading. *See Luce*, 802 F.2d at 56; *see also Wright and Miller,* 5A Fed. Prac. & Proc. Civ.3d § 1291.

In sum, because Plaintiffs cannot possibly have the information necessary to plead with specificity the elements necessary to show the existence of a joint venture, should the Court determine that such allegations are necessary, Plaintiffs request the opportunity to conduct limited discovery on the issue.

### D.    CNA Cannot Both Deny its Capacity to be Sued and Avail Itself of the Justice System

Finally, CNA asserts that it is not an entity capable of being sued. There is abundant available case law evidencing that "CNA Insurance Companies" has both commenced and answered litigation under this name. For CNA to deny its capacity to be sued while simultaneously availing itself of, participating in, and benefiting from the justice system both in New York courts and other jurisdictions is no more than a thinly-veiled attempt to avoid its obligations to answer on behalf of its actions.[1]

While Defendants point to a 1996 trademark infringement action to support its contention that there is no such entity as CNA Insurance Companies, the CNA Insurance Companies have availed themselves of the court system by filing

---

[1]    For an example of CNA's own apparent confusion, see *Bringman v. CNA Ins. Cos.*, No. Civ. A. 5:05CV64, 2007 WL 3232534 (N.D. W. Va. Nov. 1, 2007), wherein CNA initially asserted in its notice of removal that it was incorporated under the law of Delaware with a principal place of business in Chicago, Illinois. *Id.* at *2. It then shifted direction in its motion to dismiss by asserting it was not a legal entity capable of suing or being sued. *Id.* The court, recognizing that the plaintiff never argued that CNA was a corporation but rather an unincorporated association, denied CNA's motion to dismiss. *Id.*

actions as plaintiffs as such. *CNA Ins. Cos. v. Waters*, 926 F.2d 247 (3d Cir. 1991);

*CNA Ins. Cos. v. Sliski*, 744 N.E.2d 634 (Mass. 2001); *CNA Ins. Cos. v. Cave*, 753 A.2d

141 (N.J. Super. Ct. App. Div. 2000). Further, federal courts have allowed litigation to

go forward under circumstances similar to the current action. The United States District

Court for the Eastern District of Pennsylvania denied a motion to dismiss brought by

CNA Financial who also argued that there was no legal entity by the name of CNA

Insurance Company. *Continental Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937,

964 (E.D. Pa. 1995). In denying the dismissal, the federal district court acknowledged

the relevance of existent litigation commenced under the name "CNA Insurance

Companies" and legal papers filed under the name, as well as that insurance premiums

are paid to "CNA" and that insurance products are advertised under the name "CNA

Insurance." *Id.* Based on these factors, the federal district court found that it could not

conclude that the entity lacked the capacity to be sued. *Id.* Finally, CNA Insurance

Companies also has appeared as a party in actions before many United States Federal

Circuit Courts of Appeals. *See, e.g.*, *Simpson v. CNA Ins. Cos.*, 29 F. App'x 51, 2002

WL 226415 (2d Cir. 2002) (affirming jury verdict in favor of CNA Insurance Companies);

*CNA Ins. Cos. v. Waters*, 926 F.2d 247 (3d Cir. 1991); *Withers v. CNA Ins. Cos.*, 31 F.

App'x 151, 2001 WL 1747629 (5th Cir. 2001); *E.E.O.C. v. CNA Ins. Cos.*, 96 F.3d 1039

(7th Cir. 1996).

      Plaintiffs have made similar factual allegations including the advertisement

of insurance products under the name "CNA Insurance Companies." Compl. ¶ 77. As

such, CNA Insurance Companies should not be dismissed as a Defendant in this action

for lack of capacity upon Defendants' motion to dismiss.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully submit that this Court should

deny Defendants' motion to dismiss the First Amended Complaint pursuant to Fed. R.

Civ. P. 12(b)(6) in its entirety and grant Plaintiffs cross-motion to strike Defendants'

affidavits.


July 25, 2008

By:      _____ /s/ Robert M. Horkovich _____

ANDERSON KILL & OLICK, P.C.
Robert M. Horkovich, Esq. (RH-2345)
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 278-1000

ATTORNEY FOR PLAINTIFFS
PENTAIR WATER TREATMENT (OH)
COMPANY (FORMERLY KNOWN AS ESSEF
CORPORATION), PENTAIR WATER POOL &
SPA, INC. (F/K/A PAC-FAB, INC.) AND
PENTAIR WATER BELGIUM BVBA (F/K/A
STRUCTURAL EUROPE N.V. F/K/A SFC)