```
UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
PENTAIR WATER TREATMENT (OH)         : 08 Civ. 3604 (BSJ) (JCF)
COMPANY (FORMERLY KNOWN AS ESSEF     :
CORPORATION),                        :          MEMORANDUM
                                     :          AND   ORDER
and                                  :
                                     :
PENTAIR WATER POOL & SPA, INC.       :
(FORMERLY KNOWN AS PAC-FAB, INC.),   :
                                     :
and                                  :
                                     :
PENTAIR WATER BELGIUM BVBA           :
(FORMERLY KNOWN AS STRUCTURAL        :
EUROPE N.V. FORMERLY KNOWN AS        :
SFC),                                :
               Plaintiffs,           :
                                     :
     - against -                     :
THE CONTINENTAL INSURANCE COMPANY    :
(as successor by merger to           :
FIDELITY & CASUALTY INSURANCE        :
COMPANY OF NEW YORK) and CNA         :
INSURANCE COMPANIES,                 :
                                     :
               Defendants.           :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

This case concerns a dispute over insurance coverage. Plaintiffs Pentair Water Treatment (OH) Company (f/k/a Essef Corporation) ("Essef"), Pentair Water Pool & Spa, Inc. (f/k/a Pac-Fab, Inc.) ("Pac-Fab"), and Pentair Water Belgium BVBA (f/k/a Structural Europe N.V. f/k/a SCF) ("SCF") (collectively, "Pentair," formerly known as the "Essef Parties") now move pursuant to Rule 37 of the Federal Rules of Civil Procedure to compel discovery from the defendants, The Continental Insurance Company and CNA Insurance

1

Companies (collectively, "Continental").

Background

The events that give rise to the claims in this case began with an outbreak of Legionnaires' Disease on the cruise ship Horizon in the summer of 1994. The origin of the outbreak was traced to the whirlpool spa on the vessel, and specifically to its filter, which had been manufactured and distributed by the Essef Parties. Many of the passengers who became ill initiated litigation against the Essef Parties and against Celebrity Cruises Inc. and Fantasia Cruising Inc. (collectively, "Celebrity"), the owners and operators of the Horizon. Celebrity, in turn, cross-claimed against the Essef Parties. All parties agreed to determine liability and punitive damages in a bellwether case, Silivanch v. Celebrity Cruises, Inc., Nos. 95 Civ. 0374, 94 Civ. 5270 (S.D.N.Y.). Following trial in that case, the jury allocated 30% of responsibility for the passengers' injuries to Celebrity and 70% to the Essef parties and awarded the Silivanch plaintiffs $2,660,000 in compensatory damages. Silivanch v. Celebrity Cruises, Inc., 171 F. Supp. 2d 241, 250-51 (S.D.N.Y. 2001). The jury also found the Essef Parties liable for $4.2 million in punitive damages to the passenger plaintiffs and for $2.8 million in punitive damages to Celebrity. Id.

In a related action, Celebrity Cruises, Inc. v. Essef Corp., No. 96 Civ. 3135 (S.D.N.Y.), Celebrity brought claims against the

Essef Parties for the damages it sustained as a result of the outbreak, including out-of pocket losses such as refunds given to passengers, lost profits, and lost enterprise value. Following the trial of that case, judgment was ultimately entered in favor of Celebrity and against the Essef Parties for a total of $30,435,226, consisting of lost profits of $10,608,900 plus prejudgment interest of $7,478,082 on that amount, together with out-of-pocket expenses of $7,304,959 plus prejudgment interest of $5,043,285. (Judgment dated Feb. 29, 2008, attached as Exh. B to Declaration of Robert M. Kaplan dated Oct. 26, 2009 ("Kaplan Decl.")).

Thereafter, the Essef Parties, now known as Pentair, sought payment under an excess umbrella liability policy issued by Fidelity and Casualty Company of New York ("Fidelity"), which had merged into Continental. (Policy no. CXU-001807, attached as Exh. A to Kaplan Decl. (the "Policy")). When Continental declined coverage, the instant litigation ensued.

Pentair now seeks an order compelling discovery consisting of (1) testimony and documents relating to Continental's affirmative defenses, (2) documents concerning pollution exclusions, and (3) deposition testimony about underwriting practices. I will address each topic in turn.

Discussion

    A. Affirmative Defenses

In its Answer, Continental asserted 50 specific affirmative

defenses, together with a fifty-first that essentially reserved the right to offer additional defenses at a later time. (Answer, attached as Exh. AA to Declaration of Robert M. Horkovich dated Aug. 10, 2009 ("Horkovich Decl.")). Accordingly, Pentair propounded a document demand that sought any documents related to each affirmative defense. (Plaintiffs' Second Request for the Production of Documents to Defendant The Continental Insurance Company ("Second Document Request"), attached as Exh. A to Horkovich Decl.). It also served a deposition notice pursuant to Rule 30(b)(6) asking Continental to designate a witness to testify with respect to each of the affirmative defenses. (Notice of Deposition Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("Fourth Deposition Notice"), attached as Exh. L to Horkovich Decl.).

Continental objects to these requests, arguing that "discovery requests which seek to require a party to identify the evidence that it will rely on to establish its legal positions are barred by the attorney work product privilege." (Memorandum of Law in Opposition to Plaintiff's Second Motion to Compel Discovery ("Def. Memo.") at 9). Whatever vitality this sweeping contention may once have had, see Sporck v. Peil, 759 F.2d 312, 315-17 (3d Cir. 1985) (precluding discovery of documents assembled by counsel in preparation for deposition), it has been significantly diminished as the discovery process has become more transparent. Indeed, Rule

26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure provides that even without a discovery request, a party must produce "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."  Furthermore, this obligation is ongoing, and a party must supplement its initial disclosures when additional information supporting its claims or defenses comes to its attention.  Fed. R. Civ. P. 26(e).

Thus, Continental plainly has the obligation to produce the documents requested in the Second Document Request.  However, there is no purpose to be served by requiring that it duplicate disclosure that has already been made.  Accordingly, Continental shall produce all documents responsive to the Second Document Request that have not previously been turned over in discovery.

Pentair's deposition notice presents a closer question.  Taken literally, it could well be interpreted to require the designation of trial counsel as witness.  At the very least, the witness would be expected to repeat what the witness had been told by counsel about the application of facts to the legal theories reflected in Continental's Answer.  For example, Pentair asks for designation of a witness to address "[a]ll facts concerning Continental's Thirty-Second Affirmative Defense for Res Judicata/Collateral Estoppel that coverage may be barred, in whole or in part, to the extent that the doctrines of res judicata, collateral estoppel, claim

preclusion and/or issue preclusion apply." (Fourth Deposition Notice, ¶ 32). No lay witness could provide such information based on personal knowledge. On the other hand, some of the requests for testimony seem more likely to elicit factual information, such as the demand that someone be designated to testify about Pentair having paid or compromised any claims without Continental's consent. (Fourth Deposition Notice, ¶ 26). Therefore, the application to compel the designation of deposition witnesses to testify with respect to affirmative defenses is denied without prejudice to Pentair recasting its requests to seek information about facts rather than about legal issues.

B. Pollution Exclusion Clauses

Next, Pentair seeks to compel Continental to produce documents relating to any pollution exclusion clause that Continental utilized during the relevant time period, together with any specific clauses relating to exclusions for injury caused by viruses, bacteria, or fungi. (Plaintiffs' Third Request for the Production of Documents to Defendant The Continental Insurance Company ("Third Document Request"), attached as Exh. B to Horkovich Decl., ¶¶ 7-16). Continental objects to the extent that the requests go beyond the specific pollution exclusion clause in the policy at issue. (Def. Memo. at 12-15).

There is no doubt that Continental has placed in issue the pollution exclusion clause by pleading that "[c]overage may be

barred, in whole or in part, to the extent the conduct which gave rise to the underlying actions falls within the pollution exclusion in the Policy." (Answer, Twenty-Third Affirmative Defense). That exclusion provides that the Policy "does not apply to any loss, cost or expense arising out of the actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of <u>Pollutants</u>." (Policy, Endorsement 2 (Pollution Exclusion)) (emphasis in original). "Pollutants" are then defined as

> any noise, solid, semi-solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, mists, acids, alkalis, chemicals, biological and other etiological agents or materials, electromagnetic or ionizing radiation and energy, genetically engineered materials, teratogenic, carcinogenic and mutagenic materials, waste and any other irritant or contaminant. Waste includes any materials to be disposed, recycled, reconditioned or reclaimed.

(Policy, Endorsement 2 (Pollution Exclusion)). Contrary to Continental's position, documents relevant to construing this clause are not limited to those relating to the use of this precise language. Information concerning other pollution exclusions employed by Continental -- what it chose to include and how it might have altered the pollution exclusion from one policy to another -- could well shed light on the meaning of the exclusion in this case. See <u>Bridgeport Music Inc. v. UMG Recordings, Inc.</u>, No. 05 Civ. 6430, 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (allowing discovery of "similar" contracts to aid interpretation of contract at issue). Therefore, Continental shall produce the

requested documents concerning pollution exclusion clauses.[1]

C. <u>Underwriting</u>

Finally, Pentair requests an order compelling Continental to designate witnesses to testify with respect to the topics identified in paragraphs 1, 3, 4, and 5 of Pentair's first deposition notice:

> 1. Underwriting practices and procedures applicable to excess umbrella liability policies sold or underwritten between 1993 and 1995 or at or about the time Fidelity sold or issued the Policy.
>
> . . .
>
> 3. The identification of Continental's Underwriting Manuals, directives or guidelines relating to underwriting from 1993 through 1995.
>
> 4. The training manuals provided to or used by Continental employees regarding the underwriting of general liability policies from 1993 through 1995.
>
> 5. The use of best practices, manuals, guidelines or other written materials (whether in printed or electronic form) by Continental applicable to the underwriting of excess umbrella liability policies from 1993 through 1995.

(Notice of Deposition Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure ("First Deposition Notice"), attached as Exh. I to Horkovich Decl., ¶¶ 1, 3, 4, 5). Continental objects on the ground that the underwriting of any policies other than the

---

[1] Pentair has agreed to limit Request no. 16 of the Third Document Request to the standard form excess liability policy used by Fidelity. (Plaintiffs' Reply Memorandum of Law in Support of Their Second Motion to Compel Defendants to Produce Documents and 30(b)(6) Witnesses in Response to Plaintiffs' Discovery Requests at 10).

Policy specifically at issue in this case would be irrelevant. (Def. Memo. at 15-16).

Again, however, Continental espouses too narrow a view of relevance.  In its Answer, it contends that the underlying facts here did not constitute an "occurrence" or an "accident" within the terms of the Policy (Answer, Eleventh Affirmative Defense), that the lawsuit between Celebrity and the Essef defendants was not a "suit," "action," or "proceeding" under the Policy (Answer, Thirteenth Affirmative Defense), and that the underlying action did not seek amounts that Pentair was legally obligated to pay as damages.  (Answer, Sixteenth Affirmative Defense).  Each of these defenses, among others, raises issues that implicate Continental's underwriting practices.  In order to interpret the Policy, Pentair is entitled to explore what risks Continental expected to cover when it used terms similar to those in the Policy.  To be sure, Pentair's requests are far-ranging on their face, and not every aspect of underwriting practice will be relevant.  However, the precise contours of appropriate questioning are best defined in the context of specific inquiries posed during deposition.

<u>Conclusion</u>

For the reasons set forth above, Pentair's motion is granted to the extent that Continental shall (1) produce the documents demanded in the Second Document Request to the extent they have not been disclosed in discovery, (2) produce the documents demanded in

9

the Third Document Request, paragraphs 7-16, and (3) make available for deposition witnesses with knowledge of the subjects identified in paragraphs 1, 3, 4, and 5 of the First Deposition Notice. Pentair's request for an order compelling responses to its Fourth Deposition Notice is denied without prejudice to its framing the proposed depositions in terms of the factual information sought rather than in terms of legal theories.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       November 16, 2009

Copies mailed this date:

Robert M. Horkovich, Esq.
Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, New York 10020

Robert M. Kaplan, Esq.
Ferber Chan Essner & Coller, LLP
530 Fifth Avenue, 23rd Floor
New York, New York 10036

10